836 So.2d 1260 (2003)
Jane W. McKOIN, et al., Plaintiff-Appellant,
v.
Eugene A. HARPER, et al., Defendant-Appellee.
No. 36,533-CA.
Court of Appeal of Louisiana, Second Circuit.
January 31, 2003.
*1261 Travis M. Holley, Bastrop, Hollis G. Kent, Jr., for Appellants.
Robin D. McGuire, Lafayette, John C. Hamilton, Oak Grove, for Appellees, Joyce Harper & Eugene Harper.
Phillip M. Lester, Bastrop, for Appellee, Frank Messinger.
John C. Hamilton, Lafayette, for Appellees/Intervenors, Dorothy Summarell, Harold B. Summarell & Gary B. Harper.
Alex W. Rankin, for Third Party Appellees, James E. Davison and Dianne O. Davison.
Benjamin C. Perry, Third Party Appellee, In Proper Person.
Jerry F. Bray, Third Party Appellee, In Proper Person.
Carol R. Powell, Third Party Appellee, In Proper Person.
Before BROWN, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
The plaintiffs, Jane McKoin, Kelsey McKoin, Carol Ann Herrington and Scott McKoin ("the McKoins"), appeal a judgment establishing the boundary between adjacent tracts and determining ownership of the land in favor of defendants, Eugene Harper, Joyce Harper, Harold Summarell, Dorothy Summarell and Gary Harper (collectively "Harper"). For the following reasons, we affirm.

FACTS
The McKoins and Harper are owners of adjacent tracts of land with a boundary *1262 line at the west edge of McKoins' property and at the east edge of Harper's land. In December 1996, the McKoins filed suit alleging that Harper had built a metal building which encroached on the McKoin land and requesting that Harper be ordered to remove the building. Harper filed an answer with a reconventional demand against the McKoins and third-party demands against Jerry Bray, Benjamin Perry and Carol Powell, requesting that the court judicially establish the boundary between the disputed properties according to accepted surveying principles.
On September 26, 2000, the McKoins filed a supplemental petition alleging continuous and undisturbed possession of the disputed land for a period in excess of 30 years. Harper filed an exception on the grounds that McKoin was improperly trying to cumulate actions. The exception was withdrawn when the McKoins stipulated they were not seeking removal of the building or damages from Harper. Thus, the remaining issue was determination of the boundary.
At trial, the McKoins presented testimony by two land surveyors, Frank Messinger and James Braswell. In May 1981, Messinger had prepared a survey of Harper's property in an action to establish his western boundary. The survey plat showed that there was a fence on the eastern side of Harper's land. This fence had run along one side of a lane located between the Harper and McKoin tracts that had been used as an access road by other landowners and as a utility right-of-way. The road had since fallen out of use. The defendant, Harper, produced testimony by surveyor Michael Mayeux, whose findings differed from Messinger's with regard to placement of the boundary.
In its written reasons, the trial court accepted Mayeux's survey results, finding that he had applied accepted principles of surveying in his work by referring to government surveys of the area and to the deeds by which the parties had acquired their property. The trial court also concluded that plaintiffs had failed to prove adverse possession by a preponderance of the evidence, finding that they never intended to possess the area of the access lane adjacent to their western fence.
The trial court rendered judgment in favor of Harper against the third-party defendants and against the McKoins, establishing the location of the boundary between the adjacent tracts and recognizing Harper's ownership of the disputed property. The McKoins' motion for new trial was denied. The McKoins appeal the judgment.

DISCUSSION
The McKoins contend the trial court erred in establishing the boundary line in the present case. The McKoins argue that the court should have relied on the 1981 survey plat, which was attached to the boundary agreement between Harper and a third party.
The court shall fix the boundary according to the ownership of the parties. If neither party proves ownership, the boundary shall be fixed according to limits established by possession. LSA-C.C. art. 792. When one party relies on title and the other on acquisitive prescription, the party relying on title will prevail unless the adversary establishes his ownership by acquisitive prescription. Pace v. Towns, 33,071 (La.App.2d Cir.4/5/00), 756 So.2d 680.
Ownership of immovable property may be acquired by prescription of 30 years without the need of just title. LSA-C.C. art. 3486. If a party and his ancestors in title possessed for 30 years more land than called for in the title without interruption and within visible bounds, the *1263 boundary shall be fixed along those bounds. LSA-C.C. art. 794. The party who seeks title to a tract of land through acquisitive prescription bears the burden of proof. Bowman v. Blankenship, 34,558 (La.App.2d Cir.4/4/01), 785 So.2d 134.
Whether or not disputed property has been possessed for 30 years without interruption is a factual issue which will not be disturbed on appeal absent manifest error. Additionally, boundary location is a question of fact and the trial court's determination should not be reversed unless it is clearly wrong. Bowman, supra; Pace, supra.
In the present case, the testimony demonstrated that the property at issue was part of a larger tract owned by Ellis and Robert Huff, who partitioned the land in 1928, as shown by a survey plat prepared by A.C. Volk. As a result of this partition, Ellis Huff received a tract of land labeled Lot 4 and Robert Huff received Lot 2, plus a strip of land 30 feet wide along the eastern edge of Lot 4 as an access lane to his property. Thus, the east boundary of Ellis Huff's property was the western edge of the access lane. In 1979, Harper bought the easternmost 22 acres of Lot 4, the area west of the lane.
Messinger testified that in 1981, when he prepared a survey plat in connection with a boundary agreement between Harper and an adjacent landowner, there was only one fence in place dividing the Harper and McKoin tracts. Messinger stated that he determined the fence was on the east side of the lane, based upon the distance from the fence to the eastern line of Section Two of the township survey. The McKoins contend that this testimony proved that the fence depicted in the 1981 survey plat was located on the east edge of the lane and thus constituted their western boundary.
Michael Mayeux testified that he reviewed the title documents to identify the property which had been transferred to Harper. Mayeux also reviewed the Government Land Office township survey plats, the Huff partition plat and the 1981 boundary agreement plat. Mayeux explained that a surveyor's task is to go out to the field and locate the fixed monuments referenced in the prior government and private surveys and then to prepare a plat reporting the distances between the fixed monuments. Mayeux described a monument as either natural, such as a tree, or artificial, such as an iron pipe, which is set in the ground to mark the corners of survey lines.
Mayeux testified that in the field he identified the monuments mentioned in the prior government and partition surveys and prepared a plat documenting the origin of the monuments he found. Mayeux stated that the monumentation supported the placement of Harper's title boundary at the west edge of the 30-foot lane, a position which coincided with the location of the fence line identified in Messinger's 1981 plat. Thus, contrary to Messinger's determination, Mayeux opined that the fence shown in the 1981 plat was located on the west side of the lane and not the east.
Regarding the reason for the discrepancy, Mayeux testified that most of the survey section corners shown in Messinger's plat did not correspond to a source document by which to trace the origin of the monument that Messinger had reportedly found. Mayeux stated that in 1981, Harper purchased the strip of land representing the area of the lane adjacent to his tract from Robert Huff. Mayeux testified that as a result, Harper owned by title land on both sides of the fence line, so that the boundary between the Harper and McKoin tracts was located at the eastern edge of the access lane as depicted in his survey plat.
*1264 The trial court was presented with conflicting expert opinions based upon contradictory survey plats. After weighing the credibility of the witnesses and considering the evidence, the trial court found that the methodology applied by Mayeux was more consistent with generally accepted surveying principles and therefore accorded greater weight to Mayeux's survey results. In light of the evidence presented, the court's choice was reasonable. After reviewing the record, we cannot say the trial court was clearly wrong in finding that Harper had proven title ownership of the disputed property and in establishing the boundary between the parties at the location shown in the survey plat prepared by Mayeux. Thus, the judgment is supported by the evidence. The assignment of error lacks merit.

Acquisitive Prescription
The McKoins contend the trial court erred in finding that they failed to prove 30 years possession of the disputed strip of land. They argue that they exercised uninterrupted possession of the land up to the fence line shown in Messinger's 1981 survey plat.
Jane McKoin, who was 79 years old, testified that she had lived on the McKoin tract since her childhood and that her family maintained a fence around the property. She stated that the fence on the west side of the McKoins' property ran along the eastern edge of a road which was used for access by other property owners. McKoin testified that over time the lane became overgrown with shrubs and trees and that in the early 1980s, most of the McKoins' west fence was taken down by her son-in-law, Dale Herrington.
G.C. Tatum, who operated the McKoins' dairy from 1967 to 1979, testified that he maintained the fences around the McKoin tract, including the fence on the western side of the property. Tatum also stated that the McKoins' western fence ran along the east side of an access lane.
Eugene Harper testified that when he purchased his tract of land in 1979, the lane was overgrown by a thicket running along the eastern side of his land and the western side of the McKoin land. Harper stated that he once observed two fences within the thicket, which was cleared in 1980. Harper testified that he purchased the strip of land representing the area of the lane the following year.
The testimony demonstrated that the McKoins possessed land up to their western fence, which ran along the east side of the access lane. The opinions of the expert surveyors differed over the question of which side of the lane had been occupied by the fence shown in the 1981 boundary agreement survey plat. As we previously noted, the evidence presented supports a finding that the 1981 survey plat depicts the fence which had run along the west side of the lane. Thus, contrary to their contention, the McKoins did not show that more probably than not they possessed the land up to the fence depicted in the 1981 survey plat.
Consequently, we cannot say the trial court was clearly wrong in finding that the McKoins failed to satisfy their burden of proving by a preponderance of the evidence 30 years of continuous and uninterrupted possession of the disputed property sufficient to establish ownership of the land by acquisitive prescription. The assignment of error lacks merit.
In their remaining assignments of error, the McKoins contend the trial court erred in assuming that there was a difference of only two inches between the results of the surveys by Messinger and Mayeux and in declining to order another survey subsequent to the trial.
*1265 After reviewing the record, we conclude that the trial court's reference to a two-inch area of dispute in its written reasons for judgment did not refer to the difference between survey results, but to the McKoins' contention that Harper's shed encroached onto their land approximately two inches in relation to the fence line shown in the 1981 survey plat. Moreover, an appeal lies from the judgment itself, not from the reasons for judgment. Wilson v. Wilson, 30,445 (La.App.2d Cir.4/9/98), 714 So.2d 35. As we stated above, the record supports the trial court's judgment.
Regarding the McKoins' suggestion that another survey is required in this matter, we note that survey plats prepared by Braswell, Messinger and Mayeux were admitted into evidence along with the surveyors' testimony explaining their methodology and results. Based upon this record, the McKoins have failed to demonstrate the need for any further surveying of the disputed property. Consequently, the trial court did not err in declining to order an additional survey of the land at issue in this case. The assignments of error lack merit.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to the appellants, Jane McKoin, Kelsey McKoin, Carol Ann Herrington and Scott McKoin.
AFFIRMED.