1 ¡.THOMAS F. DALEY, Judge.
The plaintiff, Charles Tolmas, Inc., in Liquidation, filed a declaratory action against Calvin Lee (hereinafter referred to as Lee), deceased seeking a judgment declaring that Lee had no ownership interests in a certain portion of land. ■ Lee responded with Exceptions of Liberative and/or Acquisitive Prescription and No Cause of Action. The trial court ruled in favor of Lee, finding Lee acquired the property in question by thirty year acquisitive prescription. For the reasons that follow, we affirm as amended.
FACTS:
The parties owned property adjacent to each other on Metairie Road. The Tolmas property is at the corner of Metairie Road and Tolkalon Place and the Lee property is located on the intersections of Metairie Road, Fagot Street, and Metairie Court. In 1951, Lee built a building on his property very near its boundary with the Tolmas property. Lee operated a dry cleaning business in the building from the time the building was completed until some time in the 1970’s. |3 After that time, the building was divided in two and the front portion of the building continued to house a dry cleaning business, while the back of the building was rented to various tenants. From the time the building was completed, customers and employees of the business used a triangular shaped area on the west side of the building as a parking area. This area is located on the right side of the building facing the building. In the late 1980’s a member of the Tolmas family contacted a member of the Lee family in reference to the Lee family’s use of the property on the west side of the building. In 1998, the declaratory action that forms the basis of this appeal was filed requesting a judgment declaring that the Lees had no ownership interest or rights in the property in question, the location of the property line separating the properties, and ordering that the encroachments be removed. A hearing was held on the Lees’ Exceptions of Liberative and Acquisitive Prescription.
At the hearing the parties stipulated to a survey, which depicted a triangular piece of land that was being used by the Lees. The survey identified a sign post base located approximately four feet from the Lee building. This post held the sign for Lee’s Cleaners and was placed there in cement when the building was constructed. The parties also stipulated that the property in dispute is titled in the name of plaintiff.
The Lees presented several witnesses who testified as to the Lee family’s use and care of the property in question. Peter Hagen, III testified that he became a customer of Lee’s Cleaners in 1954. He explained that he always parked on the right side of the building. Mr. Hagen further testified that there was an area of concrete and shells on the right side of the building that had been there since the building was built. This area was used for parking. Mr. Hagen also testified that when parades passed on Metairie Road the Lees would rope off the area to the | ¿right of the building for friends and family to park. He explained that the Lees cut the grass in the area just to the right of the parking area. The grass on the Tolmas *663 vacant lot farther to the right was not cut regularly and often contained high weeds. Mr. Hagen testified that the cemented portion and gravel portion of the parking lot, as well as the area of grass cut by the Lees had remained the same size over the years.
Lyndel Brauninger testified that her parents were friends of the Lees and patronized their dry cleaning business. Her earliest recollection of the building was in the early 1960s. She identified a photograph of her mother standing on the side of the building in the area that the Lees roped off for family and friends for parades. Ms. Brauninger also identified doors on the right side of the building that were used by employees and deliveries to the building. She testified that awnings had always been over these doors. Ms. Brauninger testified that the concrete parking area had always been there and was always the same size. She explained that it was easy to determine where the Lee property ended because the grass next to the Lee property was always very high.
Laura Greco testified that she had known Patrick Lee, son of Calvin Lee since she was a teenager. She patronized the Lee’s dry cleaning business and attended parades there. Ms. Greco testified that the area between the building and the telephone pole on the right side of the building was used for parking for the business. In the late 1980s, Ms. Greco was a tenant in the Lee building. The front door of her shop was on the right side of the building.
Patrick Lee testified that Lee’s Cleaners had doors on the right side of the building. The center door was used for deliveries and employee’s entrance. The back door was used for ventilation. Mr. Lee testified that the sign pole had been there since the building was constructed and the cement and shelled parking area |Rwas always in the same area. He explained that there was a clear distinction between the Lee property and the Tolmas property because the grass around the parking area was always cut while the grass on the Tolmas property was always high.
The Lees submitted three depositions into evidence. Eighty-year-old Men Lee testified that he is Calvin Lee’s brother. He testified that the Lee’s Cleaners sign and the parking area to the right of the building had been there since the cleaners opened. He further testified that the concrete parking area was poured around the same time the building was built. Men’s wife, Helen, testified that she married her husband in 1946. Mrs. Lee testified that the sign and parking lot had been there as long as the building was there. Sandra Lee, daughter of Helen and Men, testified that the parking area and sign had been there as long as she remembered.
Eighty-four-year-old Oscar Tolmas testified that he had always lived in the New Orleans area. He had a law office two blocks from the property in question and passed this area four to five times a week. Mr. Tolmas testified that there was a concrete area on the property that connected the sidewalks on Metairie Road and Fagot Street when his family acquired the property in 1944. He testified that the family never developed their property on the corner of Metairie Road and Tolkalon Place and that he did not care if the cleaner’s customers parked on the area. He further testified that members of the church across the street also parked on his property. Mr. Tolmas testified that in 1987 or 1988 he noticed that there were businesses opening in the Lee building that put up awnings and planters. He viewed these as encroachments of the property and contacted the Lee family. Mr. Tolmas explained that this was the first time he saw *664 activity he perceived as encroachments on the Tolmas property. He further testified that the concrete and Rshelled areas had increased in size since that time. Mr. Tolmas stated that he was unsuccessful in locating the survey of the property performed when the purchase was made. Surveys from 1985 and 1988 were admitted into evidence. They depict a triangular shaped concrete area and a gravel or shelled area along side the building. A comparison of the surveys indicates that the shelled parking area is larger in the 1988 survey than it is on the 1985 survey. Mr. Tolmas testified that the 1985 survey accurately reflected the condition of the property in 1968 (thirty years before the declaratory action was filed.)
Dr. Hyman Tolmas, Oscar’s brother, testified that he had an office two blocks away from the property in question for 51 years. He estimated that he passed the property anywhere from two to five times per week. Dr. Tolmas then stipulated that the remainder of this testimony would be as Oscar testified.
After taking the matter under advisement, the trial court found that since the Lees purchased the property in 1951 until the present, possession of the Lees had been open, continuous, unequivocal and uninterrupted. The court concluded that the Lees had acquired ownership of the entire triangular shaped portion property extending from the rear corner of the Lee property diagonally to the utility pole by acquisitive prescription under Code of Civil Procedure Article 1486. This timely appeal followed.
LAW AND DISCUSSION:
On appeal, appellants argue that the Lees’ possession of the property was not sufficient to acquire the property through acquisitive prescription. They contend that in order to establish possession as owners sufficient to acquire the property, the Lees needed to construct some type of enclosure around the property they illegally possessed. They argue that the only type of enclosure erected by the Lee 17family was to rope off the area for parades. Appellants contend this was insufficient because this was not a permanent enclosure.
Appellants go on to argue that the only permanent encroachment on the property is the concrete area on the rounded corner where Metairie Road intersects with Fagot Avenue. Appellants contend that this concrete area was present when the Tolmases purchased the property based on the testimony of Oscar and Hyman Tolmas. Appellants argue that the Lee witnesses did not testify that the concrete was poured when the building was built, only that the concrete was “always there.” Appellants further argue that the placement of the shells on the Tolmas property and the erection of a sign were not sufficient to establish possession with intent to own.
Civil Code Article 3486 states: “Ownership and other real rights in im-movables may be acquired by the prescription of thirty years without the need of just title or possession in good faith.” The party asserting acquisitive prescription has the burden of proving that his possession was actual, adverse, corporeal possession that is continuous, uninterrupted, public, unequivocal, and within visible bounds. C.C. art. 3476. Whether or not disputed property has been possessed for 30 years without interruption for the purposes of acquisitive prescription is a factual determination that will not be disturbed on appeal in the absence of manifest error. McKoin v. Harper, 36,533 (La.App. 2 Cir. 1/31/03), 836 So.2d 1260, writ denied 2003-0622 (La.5/2/03), 842 So.2d 1104. The necessity of a fence or a wall is not required *665 to show adverse possession; possession is governed by the nature or use of the land. Cheramie v. Cheramie, 391 So.2d 1126 (La.1980).
All of the Lee witnesses testified that the area to the west side of the Lee building had been used for parking since the building was erected. Both Oscar and | sHyman Tolmas agreed that the area to the west of the building had been used for parking since the building was erected. The Tolmases testified that they knew the area was being used for parking by the Lees, but they did not complain because they were trying to be neighborly. The Tolmases testified that the 1985 survey that identified the cement and gravel parking area depicted the property as it appeared in 1968, thirty years before the Petition for Declaratory Judgment was filed.
The testimony and evidence at the hearing established that the Lees had been openly and publicly using the cement and gravel parking area since the construction of the building in 1951. Members of the Tolmas family were aware of the Lees use of this land, but made no formal attempt to stop use by the Lees until the filing of this declaratory action in 1998, some 47 years after the Lees began using this land. The trial court awarded the Lees the entire triangular portion of land from the rear corner of the Lee lot to the utility pole as depicted on joint stipulation two. However, we find that this was in error. A comparison of the 1985 and 1988 surveys indicate that the gravel parking area expanded between the time of the 1985 survey and the 1988 survey. Additionally, roping off the entire disputed area for the enjoyment of the Lee family and friends for parade parties is insufficient to establish adverse possession of the entire portion. The evidence established that the Lee’s Cleaners sign was placed the time the building was built in 1951 and that the side of the building adjacent to the Tolmas property was used continuously by the Lee family for parking since the building was erected in 1951. The 1988 survey indicated that the gravel parking area increased in size sometime between 1985 and 1988. Although the Lee witnesses testified that the Lee family cut the grass adjacent to the parking area extending from the rear corner of the Lee property to the utility pole, this is not sufficient to establish adverse possession of | athe entire area. See, Antis v. Miller, 524 So.2d 71 (La.App. 3 Cir.1988). Thus, we find the trial court erred in finding the Lee family acquired the entire portion of land as depicted in stipulation two. However, we find no error in the trial court’s finding that the Lees acquired the concrete and gravel parking area depicted in the 1985 survey by thirty years acquisitive prescription pursuant to C.C. art. 3486.
Accordingly, the judgment of the trial court is amended to state that the Succession of Audrey Morgan Lee[1] acquired the concrete and shelled area depicted on the west side of the property, as shown in the “survey of a portion of ground located in front of Tokalon Place or Kostmayer Subdivision Jefferson Parish, La.” dated September 18, 1985 by BFM Corporation that was attached to plaintiffs Exhibit Three, by thirty year acquisitive prescription. The judgment of the trial court is affirmed as amended.

*666
AFFIRMED IN PART; AMENDED IN PART.

. This matter was originally filed against the Succession of Calvin Lee. Subsequent to the filing of this action, the Succession of Calvin Lee was completed and the assets owned by Calvin Lee were transferred to his wife, Audrey Morgan Lee. Audrey Morgan Lee has also passed away and her succession is still under administration. The Succession of Audrey Morgan Lee has been substituted as the proper party defendant in this matter.