966 So.2d 707 (2007)
GREENGROVE MISSIONARY BAPTIST CHURCH, Plaintiff-Appellee
v.
Lawrence W. COX and Sue Cox, Defendants-Appellants.
No. 42,418-CA.
Court of Appeal of Louisiana, Second Circuit.
September 19, 2007.
*708 Kenneth L. Harper, for Appellants.
Woodrow Wilson, Bastrop, for Appellee.
Before STEWART, GASKINS and PEATROSS, JJ.
*709 GASKINS, J.
The defendants, Lawrence W. Cox and Sue Cox, appeal from a trial court judgment holding that the plaintiff, Greengrove Missionary Baptist Church, owns a disputed piece of property by virtue of 30-year acquisitive prescription. For the following reasons, we affirm in part and reverse in part the trial court judgment.

FACTS
On December 14, 1929, Greengrove Missionary Baptist Church (Greengrove) acquired approximately two acres of property on the banks of Bayou Bartholomew in Morehouse Parish. On November 18, 1942, Greengrove acquired an additional 2.5 acres.[1] Greengrove members believed that the eastern boundary of the church's property extended to Clay Banks Road. The land at issue here is the tract lying west of Clay Banks Road.[2]
Dr. A.B. Gregory and others acquired property to the east of the church property. In 1977, he and his co-owners sold the property to James and Irene West. The deed granted by Dr. Gregory includes this description concerning the boundary with the church's property:
West line of the tract being 341.8 feet in length, being the common boundary line between the property owned by the widow and heirs of Arthur Britton Gregory and of the Green Grove Missionary Baptist Church.
In 1987, the Wests sold the property to the defendants, Lawrence and Sue Cox. Greengrove alleges that in 1993, the Coxes placed some horses on the disputed tract at the east end of the property the church claims to own. Greengrove alleges that it confronted the defendants and the horses were removed.
Then, in 2004, the Coxes placed a mobile home on the west side of Clay Banks Road. Greengrove claimed that it owned the property up to Clay Banks Road and that the road formed the property line between the church's property and that of the Coxes. In April 2005, Greengrove filed a petition for recognition as owner of the immovable property. It cited the actions of the defendants in encroaching on its possession of the east end of its property. The church contended that it employed a surveyor who determined that the eastern line of the plaintiff's property was the center of Clay Banks Road. Greengrove claimed ownership of the disputed property by virtue of their deeds and sought a judgment from the court ordering that the defendants surrender possession of the disputed property to Greengrove and move the trailer.
Trial on Greengrove's claim was held on January 24, 2006. Frank Messinger, III, an expert surveyor, testified on behalf of the church regarding a survey of the property he did in 1993 following the alleged horse incident. Evidence and testimony at trial showed that Greengrove only had title to four and one-half acres of property, but claimed ownership of approximately nine or more acres. Mr. Messinger also testified regarding several discrepancies in the property descriptions in the deeds.
Mr. Messinger determined in 1993 that a previous survey by A.C. Volk used an erroneous point as the southwest corner of one of the lots claimed by Greengrove. Mr. Messinger opined that the eastern line *710 of the church property lies in the center of Clay Banks Road.
Greengrove also presented testimony to show that it used the disputed property over the years and had bushhogged it about once a year. James Canady stated that he had been a member of Greengrove for 40 years and had served as chairman of the deacons for 20 years. He stated that the church always considered the disputed property to belong to the church. Mr. Canady said that there had been an old "seed house" on the property and that there was a little strip of woods between the seed house and the disputed land that Mr. Cox is possessing.
Mr. Cox testified that there is a wooded area which covers about three-fourths of an acre which we surmise is located between the seed house and the old fence row. (The old fence row is to the west of where Mr. Cox has erected his fence.) He said that no one has maintained the wooded area since 1987. He testified that it is 190 feet from the center of Clay Banks Road to the corner that he is claiming.
In February 2006, the trial court rendered a judgment rejecting the plaintiff's claim, and found that the church did not prove that it had title to the disputed property up to Clay Banks Road. According to the court, while Greengrove sought to advance the "acquisitive prescription" component of La. C.C.P. art. 3653 at trial, nowhere in their petition or pretrial statement was this alleged.[3] Therefore, the trial court refused to consider whether Greengrove had proved ownership of the property by acquisitive prescription. The court also found that the plaintiff's survey efforts and the testimony of Mr. Messinger were vague and ambiguous. Accordingly, the trial court ruled in favor of the defendants. We agree that the church failed to carry its burden of proving that its two deeds conveyed ownership of the disputed property.
On March 10, 2006, Greengrove sought to file an amended petition claiming that it acquired ownership of the disputed property by virtue of deed and by acquisitive prescription of the disputed property up to Clay Banks Road. Greengrove also filed a motion for partial new trial, claiming that the trial court judgment was contrary to the law and the evidence with respect to the issue of acquisitive prescription. The trial court conducted a hearing on the motion in April 2006, and granted a partial new trial on that issue. The trial court denied permission to file the amended petition with a notation indicating that the filing was disallowed because the motion for partial new trial was granted.
The trial court heard evidence on the partial new trial on August 10, 2006, concentrating on the issue of whether Greengrove could establish ownership of the disputed tract by acquisitive prescription. In September 2006, the trial court entered judgment in favor of Greengrove and against the defendants, recognizing the church as the legal owner of the property in dispute and finding that the dividing line between Greengrove and the defendants is *711 Clay Banks Road. The defendants were ordered to surrender possession of the property west of Clay Banks Road to Greengrove and to move the trailer from the property within 60 days of the time the judgment becomes final.
In reasons for judgment, the trial court noted that it originally ruled against Greengrove, finding that they did not have title to the disputed property. The matter returned to the court on the limited issue of whether Greengrove obtained ownership of the property through acquisitive prescription by possessing for ten or 30 years. The trial court found that Greengrove had established ownership of the property by 30-year acquisitive prescription, from 1961 to 1991, in such a way as to give notice to the world that their possession was being exercised. The defendants appealed suspensively.

AMENDED PETITION AND MOTION FOR PARTIAL NEW TRIAL
The defendants urge that in granting a partial new trial to receive testimony on the issue of acquisitive prescription, the trial court erred in allowing an amendment to the plaintiff's pleadings. The defendants request that the September 2006 judgment be vacated and the original judgment be reinstated. This argument is without merit.

Legal Principles
La. C.C.P. art. 1971 provides:
A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only. If a new trial is granted as to less than all parties or issues, the judgment may be held in abeyance as to all parties and issues.
La. C.C.P. art. 1972(1) sets forth that a new trial shall be granted, upon contradictory motion of any party, when the verdict or judgment appears clearly contrary to the law and the evidence.
In granting the motion for partial new trial, the trial court cited La. C.C.P. art. 1154, which provides:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Discussion
Although the trial court originally found that Greengrove did not prove title to the disputed property, it concluded that it erred in failing to consider whether the plaintiff had proven ownership by acquisitive prescription; therefore, its original decision was contrary to the law and evidence. The record in this matter shows that, although the plaintiff did not specifically plead ownership by acquisitive prescription in the original petition, when this matter was first heard in the trial court, extensive evidence was presented on that *712 issue, without objection by the defendants. When evidence is introduced without objection on an issue not pleaded, the pleadings are deemed to have been enlarged or automatically amended by the implied consent of the parties. Brown v. Sambo's of Louisiana, Inc., 403 So.2d 813 (La.App. 2d Cir.1981).
The issue of acquisitive prescription was raised without objection in the original hearing. Under these circumstances, the trial court recognized that it erred in failing to consider an issue before the court for decision. We find that the trial court was correct in its ruling on the motion for partial new trial.

ACQUISITIVE PRESCRIPTION
The defendants argue that the trial court erred in finding that Greengrove established ownership of the disputed property by virtue of 30-year acquisitive prescription. The defendants acknowledge that the evidence shows that Greengrove possessed the disputed property from 1961 until 1968 or 1969 when the last residents vacated the old seed house. The defendants dispute the claim that the church bushhogged the entire property once a year. The defendants maintain that the disputed tract was not used again until 1977 when Mr. West, their ancestor-in-title, cleared the property west of Clay Banks Road, fenced it, kept horses on it, and stored used equipment on it. The defendants also point out that their ancestor-in-title gave Eugene Harper permission to put an irrigation pipe across the disputed property. The defendants claim that their testimony, asserting the church was not in possession of the disputed tract from at least the late 1970s, was corroborated by numerous other witnesses.
The defendants urge that the evidence adduced at trial establishes their possession of the disputed tract up to the fence line west of Clay Banks Road. The defendants contend that this court should establish the fence line that they erected as the boundary line between their property and that of Greengrove. This argument has merit.

Legal Principles
The plaintiff filed a petitory action in this matter. Such an action is one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right therein, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership. La. C.C.P. art. 3651. To obtain a judgment recognizing his ownership of immovable property or a real right therein, the plaintiff in a petitory action shall prove that he has acquired ownership from a previous owner or by acquisitive prescription, if the court finds that the defendant is in possession thereof. La. C.C.P. art. 3653.
Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. La. C.C. art. 3425. The corporeal possession necessary to support the plea of prescription must include such external signs of possession as to indicate clearly that the possessor holds control and dominion over the property. City of Shreveport v. Noel Estate, Inc., 41,148 (La.App. 2d Cir.9/27/06), 941 So.2d 66, writ denied, 2006-2774 (La.1/26/07), 948 So.2d 171. The intent to possess as owner may be inferred from the surrounding facts and circumstances. Openly maintaining property to which one does not have record title by raising crops or using the property for pasturage is evidence of intent to possess as owner. Morris v. Adams, 39,513 (La.App. 2d Cir.5/25/05), 903 So.2d 638.
*713 The trial judge found that Greengrove did not have just title to the property, a determination with which we agree. Consequently, the issue of ten-year acquisitive prescription, which requires good faith and just title, is not an issue in this matter. The trial court found that the plaintiff obtained ownership of the disputed tract by virtue of 30-year acquisitive prescription. Ownership and other real rights in immovables may be acquired by the prescription of 30 years without the need of just title or possession in good faith. La. C.C. art. 3486. For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed. La. C.C. art. 3487.
At issue in this case is the boundary between the contiguous pieces of property claimed by the plaintiff and the defendants. In such matters, the court shall fix the boundary according to the ownership of the parties; if neither party proves ownership, the boundary shall be fixed according to limits established by possession. La. C.C. art. 792. When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than by titles. If a party and his ancestors in title possessed for 30 years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds. La. C.C. art. 794. The party who seeks title to a tract of land through acquisitive prescription bears the burden of proof. McKoin v. Harper, 36,533 (La.App. 2d Cir.1/31/03), 836 So.2d 1260, writ denied, XXXX-XXXX (La.5/2/03), 842 So.2d 1104.
Whether or not disputed property has been possessed for 30 years without interruption is a factual issue and will not be disturbed on appeal absent a showing of abuse of discretion or manifest error. Bowman v. Blankenship, 34,558 (La. App. 2d Cir.4/4/01), 785 So.2d 134, writ denied, XXXX-XXXX (La.6/22/01), 794 So.2d 794.
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Bright Morning Star Missionary Baptist Church v. Brown, 38,333 (La.App. 2d Cir.5/28/04), 877 So.2d 1003, writ not considered, 2004-2136 (La.11/15/04), 887 So.2d 466; Washington v. James, 42,345 (La.App. 2d Cir.8/15/07), 962 So.2d 1154.

Discussion
The plaintiffs presented evidence of acquisitive prescription beginning in 1961. The court framed the issue as whether Greengrove possessed the property continuously and without interruption to visible boundaries for 30 years.
Mr. Canady testified that a former pastor moved into the seed house on the property in 1962 and gardened on the disputed tract up to Clay Banks Road. After the pastor moved, another family lived in the seed house and also planted on the tract. Mr. Canady said that Greengrove's possession was disturbed in 1993 when the defendants moved horses onto the tract. The church commissioned a survey and hired a lawyer who talked to the defendants and the horses were moved.
Mr. Canady testified that he bushhogged the property about once a year until the defendants moved the mobile home onto the property. He was questioned about a row of steel fence posts that appeared on the survey done by Mr. Messinger, but denied ever seeing any fence posts on the property.
*714 Daisy Davis testified that she had been a member of Greengrove for 43 years and that the church had previously used the property where the defendants' trailer is now located. She stated that the church used the property for parking and that children played on the land. She said that those who lived on the church grounds farmed the disputed tract up to Clay Banks Road.
Numerous longtime members of Greengrove corroborated testimony that people lived on the church grounds and farmed up to Clay Banks Road. Several denied ever seeing any fences on the disputed tract.
Dora Alexander testified that her family moved into the seed house around 1965 and moved out in 1968 or 1969. She stated that she did not know of anyone living in the house after that. She said that she believed her family was the last to farm the disputed tract.
Ruthie Canady testified that she had been attending Greengrove for 60 years. She stated that her husband, James, bushhogged the property through the years. According to Mrs. Canady, her husband bought a bushhog in 1984, but prior to that, he borrowed or rented equipment to maintain the property.
Donald Ray Bryan testified that he lived near Greengrove from 1940 to 1956 and that Clay Banks Road has not always been in the same place. He stated that, at one time, the road was closer to the bayou bank in front of the seed house. He identified a 1941 aerial photo which showed the road in a different position. Mr. Bryan stated that John Smith, who obtained the patent on the land from the United States, lived in the seed house in the 1960s.
Omer Bryan testified that he was 82 years old and that Donald Ray Bryan is his younger brother. He stated that he lived in the vicinity of Greengrove Church most of his life, and he corroborated his brother's testimony that Clay Banks Road was previously in a different location. He stated that the church members did not bushhog the disputed tract.
James West testified that he purchased property to the east of the church in 1977 from Dr. A.B. Gregory. He stated that there was an old fence by the road and he was told his property line went to that fence. Mr. West claimed that he knocked down some trees and put another fence along the old fence line. He stated that he had horses on the land at one point.
In 1987, Mr. West sold the property to the defendants. He told Mr. Cox that the west boundary of the property went to the fence on the west side of Clay Banks Road. Mr. West claimed that he stored used equipment on the disputed tract. He also said that he gave Eugene Harper permission to put an irrigation pipe across the property. Mr. West denied ever seeing anyone from the church bushhog the property.
Mitch West, the son of James West, testified that he fenced part of the property while living there with his father and that they corralled horses and had a hog pen on the land. He corroborated that Mr. Harper put an irrigation line across the property and that the West family stored used equipment on the land.
Eugene Harper testified that in 1979, he obtained permission from James West to put an irrigation pipe across the disputed tract, thinking that Mr. West owned the property. He said that the pipe ran from the bayou under Clay Banks Road and surfaced on the disputed tract. He stated that he used the pipe for two years and no one from the church ever complained about it.
*715 One of the defendants, Lawrence Cox, testified that he had lived on his property adjacent to the church for approximately 20 years. When he bought his land from Mr. West, he buried some old equipment and put up a new fence where an old fence had been on the disputed tract. He claimed that he bushhogged and disked the tract now claimed by Greengrove and that his daughter used it for barrel racing. Mr. Cox said that he never saw Mr. Canady do any bushhogging on the tract. Mr. Cox denied ever having a discussion with Greengrove's attorney in 1993 about horses on the tract. He denied keeping horses on the property, but said that he and family members rode horses on the land.
Dr. Gregory's deed to Mr. West, who then sold the property to the defendants, describes the west boundary between the defendants and the church as 341.8 feet. Mr. Cox testified that Mr. Messinger showed a line from the north edge of the Old Bonita Highway to the bayou as measuring 341 feet. Mr. Cox said that this was the approximate location of his fence.
Pursuant to questioning by the court, Mr. Cox stated that when he purchased the property from Mr. West in 1987, he understood that the property line went right up to the seed house. He stated that there was no fence on the property until he put one up when they moved in the trailer in 2004.
Mr. Canady testified again, saying that he never saw any used equipment on the land or an irrigation pipe. He denied seeing a row of steel fence posts which appeared on Mr. Messinger's survey. He also said that he never saw any barrels on the land which would have been used for barrel racing. He insisted that he bushhogged the tract. He said that he saw livestock on the land, but was not clear what kind of animals he observed. He stated that he did not bushhog a corner of the property where there was a ravine.
Cleveland Holmes, the current pastor of Greengrove, testified that there was never a fence on the disputed tract and there was no fence present in 1995 when the seed house was torn down.
The witnesses on behalf of Greengrove testified that the church possessed the disputed property from 1961 until 2004 by virtue of residents living in the seed house who farmed the property up to Clay Banks Road, as well as use of the land for parking and a place for children to play. Church members also testified that after people ceased living in the seed house, the property was bushhogged once a year and maintained by the church. Therefore, from 1961 to 1991, the church claims that it had possession of the property and acquired ownership through 30-year acquisitive prescription. The church's witnesses testified that their possession was disturbed in 1993 when the defendants put horses on the property. The church claimed that through an attorney, they demanded that the defendants remove the horses and restore the church's possession of the property. The church's witnesses testified that the defendants removed the horses and the church remained in possession of the property until 2004 when the defendants placed a mobile home on the land.
In stark contrast, the defendants and their ancestor-in-title testified that they understood that their property line was west of Clay Banks Road. At various times from 1977 to 2004, they had a fence on the property, grazed horses on it, had a hog pen, stored used equipment there, and allowed an irrigation line to be laid across the disputed tract. The testimony also shows that the location of Clay Banks Road has changed over the years. Previously, it was located closer to the seed *716 house. The defendants also sought to show that there was a ravine on the disputed tract which would have prevented the church members from parking on the tract, as they claimed. The defendants asserted that there was a small wooded area between the church property and the defendants' fence which had not been maintained by anyone since 1987.
The plaintiff and the defendants in this matter proceeded amicably and honorably in advancing their claims in this matter. However, the evidence shows that the defendants and their ancestors-in-title interrupted the church's possession of the property in 1977 and continued that interruption until 2004. When Mr. West acquired his land in 1977, he cleared the disputed property which obviously had not been used for several years. Mr. West fenced the property, placed livestock on it, allowed a neighbor to run an irrigation line over it and stored used equipment on it. The defendants submitted pictures of the irrigation line and the used equipment situated on the property.
In addition to the 4.5 acres set forth in its deeds, the church was able to show that it possessed and maintained additional property lying to the east of the church. However, Greengrove did not carry its burden of proving continuous, uninterrupted, peaceable, public, and unequivocal possession of the disputed tract of land lying just west of Clay Banks Road and possessed by the defendants. The trial court was manifestly erroneous and clearly wrong in deciding otherwise.

CONCLUSION
For the reasons stated above, we affirm that portion of the trial court judgment granting a partial new trial in this matter on the issue of acquisitive prescription. We reverse that portion of the judgment finding that the plaintiff, Greengrove Missionary Baptist Church, proved ownership of the disputed property through 30-year acquisitive prescription. Costs in this court are assessed one-half to the plaintiff, Greengrove Missionary Baptist Church, and one-half to the defendants, Lawrence W. Cox and Sue Cox.
AFFIRMED IN PART; REVERSED IN PART; RENDERED.
*717 
NOTES
[1] In 1961, the United States issued a land patent on the property that is now owned by the plaintiff and the defendants. This patent was issued to a previous owner, John Smith. Smith deeded to Greengrove and to the defendants' ancestor-in-title his interest in the disputed property.
[2] See the diagram attached to this opinion.
[3] La. C.C.P. art. 3653 provides:

To obtain a judgment recognizing his ownership of immovable property or real right therein, the plaintiff in a petitory action shall:
(1) Prove that he has acquired ownership from a previous owner or by acquisitive prescription, if the court finds that the defendant is in possession thereof; or
(2) Prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof.
When the titles of the parties are traced to a common author, he is presumed to be the previous owner. [Emphasis supplied.]