| 1026 CONTI HOLDING, LLC | * | NO. 2021-CA-0417 |
|---|---|---|
| VERSUS | * | COURT OF APPEAL |
| 1025 BIENVILLE, LLC | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| | * | |
| | * | |

* * * * * * *

*TFL*

**LOVE, C.J., CONCURS IN PART; DISSENTS IN PART; AND ASSIGNS REASONS**

I concur with the majority's finding that Conti has good record title. However, I respectfully dissent from the majority's holding that the trial court did not manifestly err by finding that Bienville acquired title to Lot AA through acquisitive prescription.

The trial court issued reasons for judgment wherein the judge found acquisitive prescription had run on behalf of Bienville, but did not address the interwoven issue of precarious possession. Although we are tasked with reviewing judgments and not reasons for judgment,[1] "a court of appeal may review the trial court's reasons for judgment to 'gain insight' into the trial court's judgment." *Succession of Fanz*, 19-0503, p. 9 n.3 (La. App. 4 Cir. 1/29/20), 2020 WL 476794, *4, ___ So. 3d ___, ___, *writ denied*, 20-00738 (La. 9/23/20), 301 So. 3d 1154.

The Louisiana Supreme Court found that a factual finding regarding precarious possession was necessary when determining whether acquisitive prescription had run, allowing for the acquisition of a servitude. *Boudreaux v. Cummings*, 14-1499, p. 4 (La. 5/5/15), 167 So. 3d 559, 561. The Court opined:

> Despite the court of appeal's statement to the contrary, a review of the record indicates the trial court did not make a factual finding as to whether Boudreaux

---

[1] *See Wooley v. Lucksinger*, 09-0571, 78 (La. 4/1/11), 61 So. 3d 507, 572.

1

was a precarious possessor. Rather, the trial court found that precariousness does not apply to incorporeal immovables. However, the Louisiana Civil Code clearly states that the laws of acquisitive prescription of immovable property apply to apparent servitudes. La.Civ.Code art. 742. Precariousness, or the lack thereof, is a legal concept relevant to acquisitive prescription, and is, thus, applicable to apparent servitudes, such as the right of way over Cummings' land. See La.Civ.Code art. 3477. Accordingly, the trial court legally erred, necessitating a *de novo* review by this court.

*Id*. Much like the Supreme Court in *Boudreaux*, I find that the trial court committed legal error by excluding a factual determination of whether Bienville or the ancestors in title were precarious possessors, and would conduct a *de novo* review of the record.

This Court previously outlined the process for acquiring ownership of immovable property as follows:

> Ownership of immovable property may be acquired through a ten- or thirty-year prescriptive period. La. Civ.Code arts. 3473 et seq. A possessor of immovable property without just title is considered a bad-faith possessor and is therefore subject to the thirty-year prescriptive period. La. Civ.Code art. 3486. To establish acquisitive prescription, the bad-faith possessor must demonstrate continuous, uninterrupted, peaceable, public and unequivocal corporeal possession for thirty years. La. Civ.Code art. 3476 (emphasis added). Additionally, it is well-settled in Louisiana that the party claiming title to a tract of land by acquisitive prescription bears the burden of proof. *McKoin v. Harper*, 36,533, p. 3 (La.App. 2 Cir. 1/31/03), 836 So.2d 1260, 1263 (citing *Bowman v. Blankenship*, 34,558, p. 4 (La.App. 2 Cir. 4/4/01), 785 So.2d 134, 138, *writ denied*, 01-1354 (La.6/22/01), 794 So.2d 794).

*Grieshaber Family Properties, LLC v. Impatiens, Inc.*, 10-1216, p. 7 (La. App. 4 Cir. 3/23/11), 63 So. 3d 189, 194-95 (footnote omitted).

"The exercise of possession over a thing with the permission of or on behalf of the owner or possessor is precarious possession." La. C.C. art. 3437. Acquisitive prescription cannot run in favor of a precarious possessor. La. C.C. art. 3477. "A precarious possessor, such as a lessee or a depositary, is presumed to

possess for another although he may intend to possess for himself." La. C.C. art. 3438. "Any other precarious possessor, or his universal successor, commences to possess for himself when he gives actual notice of this intent to the person on whose behalf he is possessing." La. C.C. art. 3439.

The majority concluded that a servitude of Lot AA was re-established in the 1938 sheriff's sale to Dumestre and that Bienville's ancestors in title were precarious possessors of Lot AA. I agree. Nonetheless, the majority further found:

> that Bienville's ancestors in title had open, public, continuous and uninterrupted corporeal possession of Lot AA to the exclusion of everyone, including Saxton's estate, from, at the latest 1966, until this lawsuit was instituted. Bienville's ancestors in title also took overt and unambiguous steps that would have alerted Saxton's estate that they intended to possess Lot AA for themselves. For over thirty years, the Holzer Entities conducted its businesses on Lot AA and maintained equipment, i.e., a gas tank, gas pump, trucks and other possessions, on the lot. The Holzer Entities also prohibited others from parking in Lot AA, had vehicles towed from the lot, and erected a fence on Lot AA to prohibit others from entering the lot. As early as 1947, Lot AA was assessed in the name of Holzer Realty, and Holzer Realty paid city taxes on Lot AA until the year 2000. Moreover, from 2001 until 2006, during the time Bruno had corporeal possession of Lot AA, it had exclusive use of Lot AA and paid the taxes on the lot. Likewise, Bienville paid the taxes on Lot AA and had open, uninterrupted and peaceful possession of the lot until the year 2015.

Based on this reasoning, the majority concluded that the trial court did not commit manifest error.

I disagree with the majority's characterization of Bienville's and the ancestors in title's precarious possession as having changed to possession as owner. Reviewing the record *de novo*, I find that evidence demonstrating a change from precarious possession was lacking and insufficient to put Saxton's estate on notice of a change. There is no evidence in the record that Bienville nor the ancestors in title gave actual notice to the Saxton's estate that they intended to

3

possess Lot AA for themselves. *See Delacroix Corp. v. Perez*, 98-2447 (La. App. 4 Cir. 11/8/00), 794 So. 2d 862 (where the precarious possessor erected gates, built duck blinds and deer stands, and evicted someone with permission to hunt on the land). *See also Grieshaber*, 10-1216, p. 10, 63 So. 3d at 197 ("nor did he or any other family member receive notice from Mr. Toth or Impatiens that Mr. Toth intended to take possession of the strip of land."); *Fontenot v. Town of Mamou*, 18-301, p. 6 (La. App. 3 Cir. 12/19/18), 262 So. 3d 904, 908 ("There is no evidence in the record that indicates the Town gave actual notice of its intent to possess the land as owner to any of the landowners.").

The record does not demonstrate that the ancestors in title's usage of Lot AA was inconsistent with their servitude rights. As such, acquisitive prescription did not run in favor of Bienville or the ancestors in title. Therefore, I find that the trial court erred by granting Bienville's Reconventional Demand for Declaratory Judgment of Ownership, as Conti is the legal and actual owner of Lot AA. I would reverse and grant Conti's Petition for Declaratory Judgment of Ownership. Additionally, I would remand for consideration of Conti's Action of Trespass.