981 So.2d 775 (2008)
LOUTRE LAND AND TIMBER COMPANY, Plaintiff-Appellee,
v.
Wilton A. ROBERTS, Edward Roberts, Mark A. Roberts and Toni L. Roberts Daschke, Defendants-Appellants.
No. 42,918-CA.
*776 Court of Appeal of Louisiana, Second Circuit.
April 16, 2008.
Opinion Dissenting from Denial of Rehearing May 30, 2008.
Knight Law Firm by Robert T. Knight, Metairie, for Appellants.
Cotton, Bolton, Hoychick & Doughty, L.L.P., by John Hoychick, Jr., Rayville, for Appellee.
Before BROWN, PEATROSS & MOORE, DREW & LOLLEY, JJ.
PEATROSS, J.
Defendant, Edward Roberts,[1] appeals from the trial court's granting of a motion *777 for partial summary judgment in favor of Plaintiff, Loutre Land and Timber Company. The parties dispute the ownership of a portion of land ("disputed property"). In an effort to assert ownership over the disputed property, Defendant crossed an existing fence and attempted to erect a new fence enclosing the disputed property as part of his land. In the process, Defendant destroyed pine seedlings that had been planted by Plaintiff. Plaintiff filed suit to determine ownership of the property and for damages. In granting Plaintiff's motion for partial summary judgment, the trial court determined that Plaintiff had acquired ownership of the disputed tract by virtue of 30 years of continuous, uninterrupted, public and unequivocal possession. After a trial on damages, the trial court awarded damages to Plaintiff totaling $15,250. Defendant appeals the ruling on the motion for summary judgment, asserting that there are genuine issues of material fact and, in the alternative, that the amount of damages is excessive. Plaintiff answered the appeal seeking an increase in damages. For the following reasons, we reverse the judgment and remand for further proceedings.

FACTS
A long existing fence separated Plaintiff's land, locally known as "Morgan Place," from Defendant's land to the south, locally known as "Roberts Place." The fence created the southern boundary to the disputed property enclosing it as part of Morgan Place. In 2002, Plaintiff purchased Morgan Place from the Succession of Marie Wilson Morgan. Plaintiff's property description in its deed, however, did not include any property in Section 10, and the disputed property lies entirely within Section 10. Roberts Place was owned by Wilton Roberts and is now solely owned by Defendant, who is his son. In 1964, Wilton Roberts purchased 32 acres in the northeast corner of Section 10, which included the disputed property. The existing fence divided that 32 acres almost in half and the disputed property consists of approximately 18 acres.[2] When he bought the 32 acres, Wilton Roberts did not move or remove the fence. In early 2003 and after the sale of Morgan Place to Plaintiff, Defendant also acquired a quit claim deed to the disputed property from the Succession of Marie Wilson Morgan, on the advice of his attorney.
In the midst of other boundary disputes with Plaintiff, Defendant obtained a survey of the property to which he held record title. As a result of the survey, he confirmed that his deed included the disputed property. In June 2003, he attempted to erect a new fence along the northern boundary according to the survey. In doing so, he crossed the existing fence and "bush hogged" a path for the new fence, destroying a number of pine seedlings that had been planted by Plaintiff. He also erected several fence posts, but did not complete the fence. Defendant's actions were discovered by H.E. Perry, an employee of Plaintiff, when Mr. Perry returned from a two-week trip.
*778 On Plaintiff's motion for partial summary judgment, the trial court determined that the fence that separated the two properties had been in existence for over 30 years, that Plaintiff's predecessors in title had possessed the disputed tract openly and publicly and that Defendant had never possessed the disputed property. It reasoned that the quit claim deed to Defendant did not affect Plaintiff's ownership because the adverse possession by the Morgan family went to Plaintiff with the purchase of Morgan Place. Accordingly, the trial court granted the motion for partial summary judgment of Plaintiff and declared Plaintiff to be the owner of the disputed property.
In determining damages, the trial court found that Defendant violated La. R.S. 3:4278.1,[3] either by destroying the seedling trees willfully and intentionally, or by destroying the trees when he should have been aware that his actions were without consent of the owner and then failed to make payment after 30 days from notification and legal demand. Under the statute, the trial court awarded Plaintiff civil damages in the amount of three times the fair market value of the trees plus reasonable attorney fees. The trial court awarded Plaintiff $650 to remove the fence and posts, $700 for restoration costs, $1,000 for Plaintiff's harassment and inconvenience and $300 in treble damages based on its valuation of $100 for the damaged pine seedlings. In addition, the trial court awarded Plaintiff attorney fees in the amount of $12,500.

DISCUSSION

Summary Judgment
Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. Costello v. Hardy, 03-1146 (La.1/21/04), 864 So.2d 129; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); Mosley v. Temple Baptist *779 Church of Ruston, Louisiana, Inc., 40,546 (La.App.2d Cir.1/25/06), 920 So.2d 355. When the issue before the court on the motion for summary judgment is one on which the mover will bear the burden of proof at trial, the burden of showing that no genuine issue of material fact exists remains with the mover. See La. C.C.P. art. 966(C)(2).
The Louisiana Supreme Court has explained that:
A fact is "material" when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits.
Istre v. Meche, 05-2508 (La.6/16/06), 931 So.2d 361 (internal cites omitted), citing Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94); 639 So.2d 730.
Under La. C.C. art. 794, a title holder may acquire more land than his title calls for by possessing property beyond his title for 30 years without interruption and within visible bounds. Such a title holder may attain the 30-year possessory period, which is necessary to perfect prescriptive title in the absence of good faith and just title, by "tacking" on the possession of his ancestor in title. La. C.C. arts. 794 and 3442. The possession must be continuous, uninterrupted, peaceable, public and unequivocal. Guillot v. Evans, 31,591-94 (La.App.2d Cir.2/26/99), 728 So.2d 1052, writ denied, 99-1178 (La.6/4/99), 744 So.2d 631. The party who seeks title to a tract of land through acquisitive prescription bears the burden of proof. Greengrove Missionary Baptist Church v. Cox, 42,418 (La.App.2d Cir.9/19/07) 966 So.2d 707, writ denied, 07-2064 (La.12/14/07), 970 So.2d 537; McKoin v. Harper, 36,533 (La.App.2d Cir.1/31/03), 836 So.2d 1260, writ denied, 03-0622 (La.5/2/03), 842 So.2d 1104.
In the case sub judice, Defendant argues that several pieces of evidence create a genuine issue of material fact regarding ownership of the disputed land. First, Defendant's father, Wilton Roberts, had paid taxes on the disputed portion of land for over 40 years. Second, the deed to Wilton Roberts dated June 18, 1964, gave Defendant's family ownership over the disputed tract of land. Third, Defendant attempted to call Plaintiff prior to any bush hogging in an effort to assert his ownership over the tract and then hired a surveyor to confirm his boundaries. Finally, Defendant argues that the quit claim deed from the Morgan estate created a genuine issue of material fact as to ownership.
Under our de novo review, we find that a genuine issue of material fact exists as to whether the Morgan estate intended to convey the disputed property to Plaintiff. As Plaintiff established through the depositions and affidavits attached to its motion for partial summary judgment, the Morgan estate, through its predecessors in the Morgan family, had possessed the disputed track continuously, uninterrupted, peaceably, publicly and unequivocally for well over 30 years. By such possession, they owned it by acquisitive prescription at the time of the sale to Plaintiff in 2002. Arguably, they could have, therefore, intended to retain the tract with the intention to convey it separately to another person. In fact, the disputed tract is not described in the 2002 warranty deed to Plaintiff. Further, the 2002 warranty deed would not have been written any differently if the *780 Morgan estate had not intended to convey the disputed tract to Plaintiff.
We find that the subsequent quit claim deed from the Morgan estate to Defendant, therefore, raises a genuine issue of fact as to whether the Morgan estate ever intended to convey its possession and rights, and, in fact, ownership, to Plaintiff. We recognize that the Morgan estate might have granted Defendant the quit claim, at his request, out of a sense of neighborly good will and without an understanding that it owned the property through prescription, but it had intended to transfer to Plaintiff all its rights to Morgan's Place, including the disputed tract, in the 2002 deed. In contrast, it might have granted the quit claim deed, because it had never intended to pass their rights to the disputed tract to Plaintiff and, instead, desired to transfer the property to Defendant.
We note that this court in Brown v. Wood, 451 So.2d 569 (La.App. 2d Cir.1984), writ denied, 452 So.2d 1176 (La.1984), refused to allow a defendant to tack onto the possession of a prior possessor by means of a quit claim confected after the dispute had developed. That court deemed the quit claim deed suspicious and declined to give it any effect. In distinguishing another case addressing this issue, Coats v. Lee, 70 So.2d 229 (La.App. 2d Cir.1954), this court in Brown, emphasized the importance of the trial court's factual finding that the quit claim deed was granted with the intent to assist the plaintiff in the property dispute and not with an actual desire to convey real rights. In the case sub judice, a determination as to the true purpose of the quit claim deed creates a genuine issue of material fact and, as such, is not appropriate on a motion for summary judgment.
A quit claim deed, or more accurately, an assignment of rights without warranty under the civil law, is not itself evidence of fraudulent or spurious intentions on the part of the vendor. Under La. C.C. art. 2502, "Such a transfer does not give rise to a presumption of bad faith on the part of the transferee and is a just title for purposes of acquisitive prescription." While other facts surrounding the quit claim deed may render it suspicious, such a determination is not appropriate for summary judgment in this matter.
We are ever mindful that this matter is not before us on the merits, but pursuant to the granting of a motion for partial summary judgment, which requires a reversal on a finding of a genuine issue of material fact. Our de novo review reveals such an issue concerning the intent of the Morgan Estate regarding the disputed tract at the time of the 2002 sale to Plaintiff. We cannot, therefore, dismiss these issues of fact discussed herein. Since genuine issues of material fact do exist, we reverse the partial summary judgment and remand to the trial court for further proceedings.

CONCLUSION
For the reasons set forth above, we reverse the partial summary judgment in favor of Plaintiff, Loutre Land and Timber Company, and remand for further proceedings. Costs of appeal are assessed against Plaintiff, Loutre Land and Timber Company.
REVERSED AND REMANDED.
BROWN, C.J., concurs with reasons.
DREW, J., concurs with the reasons assigned by C.J. BROWN.
MOORE, J., dissents with reasons.
BROWN, Chief Judge, Concurring.
Plaintiff, Loutre Land and Timber Company ("Loutre Land"), filed a trespass *781 action based on the wrongful cutting of timber (seedlings) against defendant, Edward Roberts, under the Timber Trespass Act, La. R.S. 3:4278.1. Plaintiff, who purchased 100 acres north of the disputed tract in August 2002, claims ownership through 30-year acquisitive prescription by "tacking" the possession of its ancestor in title, the Morgan Estate. Plaintiff admits that defendant is the record owner of the disputed tract, having obtained both a warranty deed in 1964, and thereafter, in 2003, a quitclaim deed from a common author, the Morgan Estate.
Defendant answered the petition and filed a reconventional demand claiming that plaintiff entered defendant's land and, without consent, planted seedlings, causing defendant to be unable to lease the property. Defendant prayed for damages as may be proven.
Both the petition and reconventional demand are tort actions backed by statutory law, La. R.S. 3:4278.1. Title, however, is a pivotal issue, and a plaintiff bears the burden of proving ownership. Bennett v. Louisiana Pacific Corp., 29,598 (La.App.2d Cir.05/09/97), 693 So.2d 1319, writ denied, 97-1552 (La.10/03/97), 701 So.2d 199.
The disputed property, 18 acres in a 32-acre tract, is in the NE of the NE of Section 10 which borders on the SE of the SE of Section 3. The section line is the boundary between the disputed tract in Section 10 and the property sold by the Morgan Estate to Loutre Land. Plaintiff's exhibit, attached to its summary judgment motion, is an aerial photograph and survey. The boundary/section line is visible and clearly marked by a 3/4 inch iron pipe at the corner of sections 3-10 and 2-11. Looking west from this iron pipe is an unobstructed view across a cultivated field. The fence involved in this case starts approximately 412 feet south of this marked corner and snakes east to west across the 32 acre tract (with the disputed 18 acres being located on the north side of the fence). The fence that divides approximately in half the 32-acre tract in Section 10 was not built by either the Morgan Estate or its ancestors in title. This is not the typical case where one neighbor builds a fence that overreaches into his neighbor's land.
In 1964, Wilton Roberts, who owned property immediately south of the disputed property, purchased the 32-acre tract from Dorothy Harbour, Ethelene Quesenberry, and McEdward Dunham for $3,200. Wilton Roberts gave a note for the purchase price that was secured by a vendor's lien. Roberts did not remove the fence that split the tract in half; however, he continued to possess all of the property, paid all of the property taxes and paid off the note secured by the vendor's lien.
The Morgan Estate owned contiguous property in Sections 2 and 3. The southern boundary of these contiguous properties was the section line which, although not fenced, was clearly visible from the ground. Loutre Land purchased the 100 acres in Sections 2 and 3 from the Morgan Estate for a specific price of $750 per acre. Loutre Land did not pay for an additional 18 acres in Section 10 and could not have considered the fence to be where the section/boundary line was located.
Edward Roberts, who was already involved in another dispute with Loutre Land concerning other property in Section 2, learned that Loutre Land was planting seedlings on the disputed 18 acres in Section 10. Roberts got a survey to confirm the section boundary line. Roberts went further and, to address any adverse possession issues, purchased from the Morgan Estate whatever interest it might have in this 18 acres. This quitclaim deed was recorded in February 2003. Only then did *782 Roberts attempt to build a fence on the section boundary line.
In the instant litigation, neither party asked to be restored to possession; instead, each claim ownership of the disputed 18 acres. Both Loutre Land and Edward Roberts have titles from a common author. Loutre Land has title from the Morgan Estate to a particularly described tract that does not include the disputed acreage. Roberts has a quitclaim deed from the Morgan Estate to the disputed tract. What is called a quitclaim deed in common law is an assignment of rights without warranty in civil law. La. C.C. Art. 2502.
There are questions about the requirements of privity established in La. C.C. Art. 3442. Under article 3442 (adopted in 1983), possession in excess of the actual description could not be tacked. Louisiana Civil Code article 794 (adopted in 1977) allows tacking of more land than described in the title. The comments to article 3442 state that "[D]espite the nonexistence of a juridical link, tacking is permitted in boundary actions within the limits of Article 794..."
The problem presented in this case is the two deeds from a common owner. The Morgan Estate had two properties: one by recorded title which it sold to Loutre Land and the other by adverse possession which it sold to Edwards Roberts. Defendant, Edward Roberts, is not without a real claim of ownership or color of title. He is not a trespasser. In fact, Roberts has the most ancient title. As compared to Loutre Land, Roberts has the best recorded title from a common author, the Morgan Estate. See La. C.C.P. Art. 3653 for proof required in a petitory action to establish ownership.
Loutre Land clearly was not entitled to summary judgment in its trespass action. For this reason I concur in the result reached by the majority.
MOORE, J., dissenting.
I respectfully dissent. Loutre Land presented the depositions and affidavits of several witnesses who established that the old fence had been in place for at least 30 years and that Loutre Land's predecessors in title, the Morgans, had farmed and hunted north of the fence for at least 30 years. The activities of the Morgans were such that, according to the witnesses, people in the area considered the old fence to be the boundary between the Morgan Place on the north and the Roberts Place on the south.
The only suggestion to the contrary is Edward Roberts's own deposition, in which he speculated that his father possibly built the fence to keep his cattle, but readily admitted that he did not know this for a fact as he was neither living nor working on the property at the time. In my view, this mere suspicion is not sufficient to create a genuine issue of material fact as to 30-year prescription.
Other items adduced by Roberts are equally unavailing in creating a genuine issue for trial. Roberts's father may have paid taxes on the disputed property, but paying taxes (and the vendor's lien) is not evidence of physical possession. Dickson v. Dominick, 345 So.2d 979 (La.App. 2 Cir.1977). The survey of the property is plainly insufficient to prevent Loutre Land from establishing 30-year acquisitive prescription. Brooking v. Vegas, XXXX-XXXX (La.App. 3 Cir. 2/4/04), 866 So.2d 370, writ denied, XXXX-XXXX (La.4/20/04), 872 So.2d 491. Interestingly, the professional survey uncovered metal pipes that mark the section line, which is arguably visible from an aerial photo, but the testimony is unanimous that everybody considered the fence, not the section line, as the boundary.
*783 The 1964 deed in favor of Roberts includes the disputed tract, but the issue is possession, not title. Boundaries fixed by acquisitive prescription take precedence over claims based on titles. La. C.C. art. 794. For this reason, I respectfully submit that the concurrence's finding that Roberts has "the most ancient title" is factual but irrelevant. There is not one scintilla of summary judgment evidence that anybody ever evicted Loutre Land or placed it on notice that its dominion over the disputed tract was seriously challenged. Without such proof, Loutre Land is entitled to judgment as a matter of law. Griffin v. Lago Espanol LLC, 2000-2544 (La.App. 1 Cir. 2/15/02), 808 So.2d 833.
The 2002 quitclaim deed, properly analyzed, is equally irrelevant. At the time it was executed, the grantor, Succession of Marie Wilson Morgan, had already transferred its possession by virtue of the prior sale of the Morgan Place. The succession had no possession or right to convey. Brown v. Wood, 451 So.2d 569 (La.App. 2 Cir.), writ denied, 452 So.2d 1176 (1984). All possession accrued by Morgan was transferred to Loutre Land with the sale of the Morgan Place and could not be later transferred to Roberts by quitclaim deed. Unlike the plurality opinion, I am not persuaded that the subsequent execution of an impotent juridical act somehow creates a genuine issue of material fact as to the grantor's "intent."
In short, none of the evidence presented by Roberts, individually or collectively, creates a genuine issue of material fact precluding the partial summary judgment. I would therefore affirm the judgment of the district court.
APPLICATION FOR REHEARING
Before BROWN, PEATROSS, DREW, MOORE & LOLLEY, JJ.
Rehearing denied.
MOORE, J., dissents from the denial of application for rehearing and assigns reasons.
MOORE, J, dissenting.
I adhere to my original position that summary judgment was proper. Two additional points require further attention. First, I question the plurality's finding that the evidence "raises a genuine issue of fact as to whether the Morgan estate ever intended to convey its possession and rights, and, in fact, ownership, to Plaintiff." In point of fact, the act of sale from the Succession of Marie Wilson Morgan to Loutre Land specifically recited that the executors of the estate:
do sell, bargain, transfer, assign, set over and deliver, with full warranty of title and complete transfer and subrogation of all rights and actions in warranty against all former proprietors of the property herein conveyed, together with all rights of prescription, whether acquisitive or liberative, to which said vendor may be entitled [.]
This clearly and emphatically conveyed all prescriptive rights to Loutre Land, to the exclusion of any genuine issue of material fact. With all due respect, the plurality's "finding" is unsupported.
Second, I reiterate that title is not "pivotal" in this case. The evidence shows that Loutre Land or its ancestors in title possessed the disputed property within visible bounds for over 30 years; hence, title is not relevant. La. C.C. art. 794. The concurrence falls into grave error by citing equitable considerations to circumvent this statement of positive law.
I would affirm the judgment of the district court.
NOTES
[1] Defendants Mark A. Roberts and Toni L. Roberts Daschke were dismissed by Plaintiff. Defendant Wilton A. Roberts died in the course of the litigation. The judgment appealed awarded damages only against Edward Roberts.
[2] In its judgments, the trial court did not assign any specific acreage to the disputed property but recognized Plaintiff as owners of "certain immovable property by acquisitive prescription consisting of that part of the Northeast Quarter, Section 10, Township 16 North, Range 8 East, lying north of the boundary fence, which fence separates the property owned by Wilton A. Roberts, et al, from the "Morgan Place" now owned by Loutre Land And Timber Company."
[3] 

A. It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney's fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees.
D. If a good faith violator of Subsection A fails to make payment under the requirements of this Section within thirty days after notification and demand by the owner or legal possessor, the violator shall also be responsible for the reasonable attorney fees of the owner or legal possessor.