CLARK, Justice.
hWe granted certiorari to determine whether the court of appeal erred in reversing the trial court’s judgment and in recognizing the defendant as the owner of a disputed tract of property. For the reasons that follow, we find the laws on acquisitive prescription require reversal of the court of appeal’s ruling, and we remand for the determination of issues pre-termitted on appeal.
FACTS AND PROCEDURAL HISTORY
The instant litigation involves a dispute over a tract of land that lies between two contiguous pieces of property that are owned by two separate owners. The Marie Wilson Morgan family owned an 80-acre tract that was described as the “Section 3 Tract” in a recorded deed dating back to 1943.[1] As evidenced by the same recorded deed, the Morgan family also owned twenty acres located adjacent to the Section 3 Tract, lying in the SW/4 of Section 2. The combined land is hereinafter referred to as the “100 Acres.” The Wilton A. Roberts family owned the tract of land that was ^described as the “Section 10 Tract” in a recorded deed.[2] Title to the Section 10 Tract passed from Dorothy Harbour to Wilton A. Roberts and Rebecca Jane Roberts in 1964. Subsequently, Edward W. Roberts (“Roberts”), the defendant, inherited his parents’ interests in the property. The Section 3 Tract is im *122 mediately north of the Section 10 Tract, and the “Ideal Boundary” between these two tracts is the governmental section line, separating the SE/4 of the SE/4 of Section 3 Tract and the NE/4 of the NE/4 of Section 10.
A fence, running from east to west, however, is located in the middle of the Section 10 Tract and has been present for well over thirty years. The amount of land lying north of the fence to the Ideal Boundary is approximately 15 acres of property and is hereinafter referred to as the “Disputed Tract.”[3] The record establishes (and no one contests) that the Morgan family adversely possessed the Disputed Tract for more than thirty years via actual acts of corporeal possession.
On July 29, 2002, the Succession of Marie Wilson Morgan (“the Succession”) sold the following land to Loutre Land and Timber Company (“Loutre”) through a full warranty deed, entitled “Act of Sale”:
The South Half of the Southwest Quarter of the Southwest Quarter (S — 1/2 of SW-1/4 of SW-1/4) of Section 2, Township 16 North, Range 8 East, Franklin Parish, Louisiana, and the East Half of the Southeast Quarter (E-l/2 of SE-1/4) of Section 3, Township 16 North, Range 8 East, Franklin Parish, Louisiana, consisting of 100 acres, more or less, including all crop base acres.
Additionally, the deed transferred “all rights of prescription, whether acquisitive or liberative, to which said vendor may be entitled.” Loutre paid the Succession $75,000.00. The deed was recorded on August 5, 2002.
Is After conducting a survey and confirming the Disputed Tract was included in the 1964 title he inherited from his parents, Roberts sought to obtain a quitclaim deed from the Succession (“the Quitclaim Deed”) to recognize his right to the land. The Succession’s attorney, Daniel Wirtz, indicated he believed the Succession had sold the Disputed Tract to Loutre and, therefore, had nothing to transfer to Roberts. However, on January 29, 2003, the Succession ultimately executed the Quitclaim Deed in favor of Roberts in exchange for $3,000.00. The Quitclaim Deed was recorded on February 27, 2003, and conveyed to Roberts the following property without warranty:
Beginning at the northeast corner of Northeast Quarter of Northeast Quarter of Section 10, Township 16 North, Range 8 East, and running due west along the north line of said forty to the Northwest corner thereof, thence due south a distance of 15.50 chains, thence due east to the eastern boundary of said forty, thence due north a distance of 15.50 chains, to the northeast corner of said forty and the point of beginning, containing 32 acres, more or less, in the Northeast Quarter of Northeast Quarter of Section 10, Township 16 North, Range 8 East.
Subsequently, in June 2003, Roberts entered the Disputed Tract and “bush hogged” a path in an effort to erect a new fence to establish the boundary described in the Quitclaim Deed. In doing so, he destroyed pine seedlings that had been planted along the fence by Loutre and created ruts in the land. Loutre filed suit, contending it owned the Disputed Tract insofar as it tacked the possession of its ancestor, the Morgan family. In its petition for damages, Loutre asserted claims for trespass and property destruction. Roberts answered and filed a reconven- *123 tional demand, arguing he owned the Disputed Tract and should be compensated for loss of rental income.
On October 7, 2004, Loutre filed a motion for partial summary judgment, asking the trial court to recognize the fence as the proper boundary. Finding Loutre to be the rightful owner of the property by virtue of acquisitive prescription, the trial court entered judgment in favor of Loutre on June 2, 2005. After a trial on the merits |4to determine the amount of damages, the trial court awarded Loutre $15,250.00.
Roberts appealed the grant of the partial summary judgment and the amount of damages. The court of appeal found there was a genuine issue of material fact regarding the intent of the Succession and Loutre as to what land was actually being transferred pursuant to the full warranty deed. Accordingly, the court of appeal found summary judgment was inappropriate and remanded the matter to the trial court to conduct a trial on the issue of intent. Loutre Land and Timber Co. v. Roberts, 42,918 (La.App. 2 Cir. 4/16/08), 981 So.2d 775, unit denied, 08-1422 (La.10/31/08), 994 So.2d 535.
On remand, the trial court heard testimony and accepted evidence relative to the intent of the Succession and Loutre in executing the Act of Sale. The trial court ruled in favor of Loutre, finding the parties intended to convey all of the land north of the fence, including the Disputed Tract. Recognizing Loutre as the owner, it then awarded it $17,750.00 in damages. Both Loutre and Roberts appealed.
The court of appeal reversed the judgment of the trial court and remanded the case to fix the boundaries in accordance with the parties’ surveys. Loutre Land and Timber Co. v. Roberts, 45,355 (La.App. 2 Cir. 8/4/10), 47 So.3d 478. In reaching this conclusion, the court of appeal held that the fact the Succession was the “ancestor in title” to both Roberts and Loutre placed the issue outside the scope of a typical boundary action when one party claims acquisitive possession and the other relies on title. Accordingly, it conducted an analysis under “something other than [Civil Code] Article 794” in order to rank the competing transfers.[4] The court of appeal began by | ¡¡acknowledging the Morgan family’s possession extended beyond thirty years and, thus, the Succession acquired the right to sell the property via acquisitive prescription. Next, the court of appeal recognized that Loutre continued the possession by virtue of planting the seedlings. Thus, it classified Roberts as an adverse possessor due to his act of bush hogging the land. Pursuant to La. C.C.P. art. 3654,[5] then, Roberts was re *124 quired to show “he had acquired ownership from a previous owner.” Ultimately, by turning to the public records doctrine, the court of appeal found Roberts satisfied this burden. In particular, it found the Quitclaim Deed to Roberts specifically described the Disputed Tract while the Act of Sale to Loutre did not. As such, the deeds represented separate transfers of differently described immovables. Further, the court of appeal noted that Roberts was a third party to the transfer between the Succession and Loutre, and he could have concluded that the Succession intended to sell the 100 acres separate from the Disputed Tract. Under the law of registry, then, it determined Roberts’ deed was superior to Loutre’s deed. Finally, the court of appeal dismissed Roberts’ claims for damages, finding no support in the record to justify an award.
Judge Moore dissented, finding La.Civ. Code art. 794 clearly governed and ^mandated a ruling different from that reached by the majority. He agreed that the Morgan family possessed the property for more than thirty years; therefore, the Succession acquired the right to sell it to Loutre. However, he disagreed that the public records doctrine had any relevance and opined that to the extent it could somehow trump acquisitive prescription, the doctrine would not work in favor of Roberts. Rather, the Act of Sale that conveyed 100 acres “more or less ... together with all rights of prescription, whether acquisitive or prescriptive, to which said vendor may be entitled” clearly evidenced the intent by the Succession and Loutre to transfer all of the property north of the fence, including the Disputed Tract. Because (1) the Act of Sale conveyed the property to Loutre and (2) a quitclaim deed can only convey whatever interest the seller actually has in the property, the Succession had nothing to sell when it executed the Quitclaim Deed in favor of Roberts. Thus, nothing was transferred to Roberts. Additionally, Judge Moore believed the majority ignored the manifest error standard by failing to give credit to the trial court’s credibility determinations that led it to find such intent indeed existed.
Loutre filed a writ application in this court, contending the court of appeal committed error. We granted certiorari to determine who is the rightful owner of the Disputed Tract. Loutre Land and Timber Co. v. Roberts, 10-C-2327 (La.1/7/11), 52 So.3d 879.
APPLICABLE LAW
“To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing.” La.Civ.Code art. 3424. “The possessor must have corporeal possession, or civil possession preceded by corporeal possession, to acquire a thing by prescription. The possession must be continuous, uninterrupted, peaceable, public, and unequivocal.” La.Civ.Code art. 3476. “Ownership and other |7real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith.” La. Civ. Code art. 3486. “For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed.” La.Civ. Code art. 3487.
“When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these *125 bounds.” La.Civ.Code art. 794. “Possession is transferable by universal title or by particular title.” La.Civ.Code art. 3441. “The possession of the transferor is tacked to that of the transferee if there has been no interruption of possession.” La.Civ. Code art. 3442.
In Marks v. Zimmerman Farms, LLC, 44,279, pp. 11-12 (La.App. 2 Cir. 5/20/09), 13 So.3d 768, 774-75, the Louisiana Second Circuit Court of Appeal succinctly explained tacking as it relates to La.Civ.Code art. 794:
The legal principles which govern tacking under La. C.C. art. 794 are in some respects different and distinct from the principles which govern tacking under La. C.C. arts. 3441 and 3442. La. C.C. art. 794 deals with boundary prescription, strictly speaking, while La. C.C. arts. 3441 and 3442 provide general rules which refer in broader terms to acquisitive prescription of property, generally. Brown v. Wood, [451 So.2d 569 (La.App. 2 Cir.1984), writ denied, 452 So.2d 1176 (La.1984) ].
In Brown v. Wood, supra, this court noted that tacking under La. C.C. art. 794 is different from tacking under the general tacking provisions of La. C.C. arts. 3441 and 3442 in the following respect:
Under Article 794, the privity of title between the possessor and his ancestor in title need not extend to the property to which the possessor asserts prescriptive title; under Article 794, the juridical link, or written instrument which passes to the possessor from his ancestor in title need not encompass or include the particular property to which the possessor claims prescriptive title. On the other | shand, it is generally conceded under the general tacking provisions of Articles 3441 and 3442 and their statutory pre-cursors, that tacking is only allowed with respect to property that is included and described in the juridical link between the possessor’s ancestor in title and the possessor himself.
Simply stated, under Art. 794 (old Art. 852), one may utilize tacking to prescribe beyond title on adjacent property to the extent of visible boundaries, but under the general prescriptive articles, Arts. 3441 and 3442, tacking may be utilized to prescribe only to the extent of title.
DISCUSSION
The record establishes that the Morgan family corporeally possessed the Disputed Tract for more than thirty years, prior to the sale of the land to Loutre.[6] The possession was continuous, uninterrupted, peaceable, public, and unequivocal. Thus, the Succession was legally entitled to sell the land. The Succession then executed the Act of Sale with Loutre, transferring the 100 acres “more or less,” “together with all rights of prescription, whether acquisitive or liberative, to which said vendor may be entitled.” This full warranty deed, then, served as the juridical link. As explained above, the deed is not required to include the particular property to which the possessor claims prescriptive title, namely, the Disputed Tract. Rather, La. Civ.Code art. 794 allows a party to tack onto the possession of its ancestor in title if the possession occurs without interruption. If the combined possession spans thirty years, the party is *126 entitled to have the boundary fixed along the visible bounds of the possession. Lou-tre, by planting the pine seedlings along the fence, continued the possession of the Succession, making the fence the proper boundary line. As such, the trial court correctly determined.Loutre is the proper owner of the Disputed Tract. The inquiry ends after this straightforward application of La. Civ.Code 794.
InThe court of appeal, however, felt “something other than 794 must be considered” because the Succession was the seller to both parties. We find nothing in Louisiana’s codal or jurisprudential authority to justify this assertion or to require an analysis under the public records doctrine. However, even if it could be argued that the Act of Sale to Loutre was required to include a specific description of the Disputed Tract, we find the language in the deed to be sufficiently particular. Namely, the Act of Sale conveys “more or less” the 100 acres together with all acquisitive prescription rights to which the seller was entitled. It is clear from the four corners of the deed that the Succession was selling all of its interests in the property.
Additionally, this exact issue of intent was decided by the trial court on remand. The Succession’s attorney, Daniel Wirtz, unequivocally testified that the parties intended to convey all the land north of the fence, including the Disputed Tract. Roberts attempted to discount this testimony by suggesting Wirtz’s memory of the sale was less than accurate. In particular, Roberts asserted the file on the matter had been destroyed; Wirtz could not correctly recall the amount of the consideration tendered in exchange for the Quitclaim Deed; and he could not remember who received the proceeds of the Quitclaim Deed. Furthermore, Roberts presented testimony in an attempt to show that the parties acknowledged the amount paid was $750.00 per acre for a total of $75,000.00. Thus, the parties must have intended to sell only the 100 acres. Ultimately, the trial court, after weighing the evidence and making credibility determinations, decided that both the Succession and Loutre intended to sell all of the property north of the fence. The court of appeal erred, then, by not giving deference to the trial court’s factual finding on this issue without mention or application of the manifest error standard of review. Rather, the | incourt of appeal simply noted “... [t]he Succession could have intended to sell the Disputed Tract and the 100 Acres separately to different parties.” This speculation ignores the significant fact that a trial occurred to determine this very issue and a factual finding was made by the trial court.
Thus, we conclude that La.Civ.Code art. 794 does not require particular title to the Disputed Tract in order to convey the accompanying acquisitive prescription rights to that land. Rather, the continued possession of the land to the fence’s boundary by the Succession and Loutre for over thirty years mandates a finding that Loutre owns the Disputed Tract. In fact, because the law operates in favor of Loutre in the absence of a particularized description of the land, the Act of Sale would have required a clause excluding the Disputed Tract if that had been the parties’ intent. Even if the law could be read to require a deed’s inclusion of all the land subject to transfer, the language of the Act of Sale was specific enough to effect a transfer of the Disputed Tract. Lastly, even if the language lacked specificity, the trial court made a factual determination that the parties intended to include the Disputed Tract, and, without a finding of manifest error or clear abuse, the court of appeal was not authorized to disturb that finding.
*127 DECREE
For the foregoing reasons, we reverse the ruling of the court of appeal and remand the matter to the court of appeal to rule on the assignments of error asserted by Loutre, which were necessarily preter-mitted by the court of appeal’s ruling.
WEIMER, Justice, concurs.
REVERSED AND REMANDED.

. The deed described the "Section 3 Tract” as "East half of the Southeast Quarter (E/2 of SE/4), of Section 3, Township 16 North, Range 8 East.”

. The deed described the "Section 10 Tract” as "[t]he North 15.50 chains (or 1023 feet) of the Northeast Quarter of the Northeast Quarter (NE/4 of NE/4) of Section 10, Township 16 North, Range 8 East.”

. The parties' references to the size of this disputed area vary from 14.36 acres to 18 acres.

. La.Civ.Code art. 794 provides:
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds.

. La.C.C.P. art. 3654 provides:
When the issue of ownership of immovable property or of a real right therein is presented in an action for a declaratory judgment, or in a concursus, expropriation, or similar proceeding, or the issue of the ownership of funds deposited in the registry of the court and which belong to the owner of the immovable property or of the real right therein is so presented, the court shall render judgment in favor of the party:
(1) Who would be entitled to the possession of the immovable property or real right therein in a possessory action, unless the adverse party proves that he has acquired ownership from a previous ■ owner or by acquisitive prescription; or
(2) Who proves better title to the immovable property or real right therein, when neither party would be entitled to the pos *124 session of the immovable property or real right therein in a possessory action.

. Several witnesses provided uncontradicted testimony that the Morgan family farmed and/or hunted on the land up unto the fence’s boundary dating back to as early as 1959. Additionally, Roberts does not contest this finding of corporeal possession by the Succession.