72 So.3d 403 (2011)
LOUTRE LAND AND TIMBER COMPANY, Plaintiff
v.
Wilton A. ROBERTS, Edward Roberts, Mark A. Roberts and Toni L. Roberts Daschke, Defendants.
No. 45,355-CA.
Court of Appeal of Louisiana, Second Circuit.
July 27, 2011.
*404 Robert T. Knight, for Edward Roberts.
Cotton, Bolton, Hoychick & Doughty, L.L.P., Rayville, LA, by John Hoychick, Jr., for Loutre Land and Timber Company.
Before BROWN, CARAWAY, DREW, MOORE and LOLLEY, JJ.
CARAWAY, J.
This boundary action involving the ownership of immovable property and damages is again before us on remand from the Supreme Court for review of the issues regarding damages which were not addressed in an earlier appeal. Loutre Land and Timber Co. v. Roberts, 10-2327 (La.5/10/11), 63 So.3d 120. The defendant's actions in attempting to construct a boundary fence were conducted on property owned entirely by plaintiff some distance away from the now established boundary between the parties' tracts. Those actions damaged plaintiff's property. Defendant contests the assessment of those damages by the trial court and the penalties and attorney fees awarded plaintiff under the timber trespass statute. Plaintiff answered the appeal seeking additional damages and trial costs which the trial court refused to award. For the following reasons, we reverse the trial court's ruling in part and affirm in part.

Facts
This protracted boundary dispute between owners of two contiguous tracts concerns the ownership of a 15-acre tract which Edward W. Roberts ("Roberts") and his family had lost through his neighbor's adverse possession and acquisitive prescription. Defendant Roberts had just begun constructing a boundary fence along the north side of the 15-acre tract when he was halted by this suit filed by Loutre Land and Timber Company ("Loutre"). The ownership to the 15-acre tract has now been adjudicated in favor of Loutre, and therefore, the arguments regarding the award of damages, costs and fees not addressed in the earlier appeals are now before this court.
*405 After a trial on the merits,[1] the trial court awarded Loutre $17,650 in total damages for Roberts's actions. This sum represented the following categories:

Fence and Post Removal: $ 650.00
Restoration: $ 700.00
Treble Damages: $ 300.00
Harassment/Inconvenience Damages $ 1,000.00
Attorney Fees: $ 15,000.00

The trial court awarded $300 in treble damages, based upon Loutre's evidence that the cost for replacement of 65 bare root seedlings was $100. Since a few years had passed between the time of Roberts's actions in 2003 and the trial, Loutre sought the sum of $1,300 to replace the destroyed seedlings with larger pine trees, plus $1,500 in labor and costs. In contrast to the cost of seedlings, each large tree would cost $20. Loutre's expert also testified that the site preparation and fertilizer costs would be between $300-$500 each and that total reforestation costs, including the additional $2,800 for planting the larger trees, would be $3,500-$4,000.
Rejecting this view, the trial judge awarded $700 reforestation costs setting forth his reasons for the award as follows:
It is this court's understanding that Loutre would be entitled to the value of the trees at the time the trees were destroyed. They were seedlings at that time. Loutre would have a duty to replant as soon as possible and then request damages, thereby minimizing damages. The amount they are requesting would be to replant larger trees, so they would be put back close to the same position had the trees not been destroyed some years ago. Mr. Perry testified that the value of the seedlings at the time they were destroyed would be approximately $100.00. This amount is fair and reasonable and will be accepted by the Court.
Tracy Scott Weems testified that the site preparation for the replanting would be between $300-$500 and cost of the fertilizer would be between $300-$500. That area that was bush hogged by Roberts was relatively small, therefore the Court will accept the minimum figure. Accordingly, the court will award the sum of $700.00 for the restoration cost.
Thus, the trial court awarded $100 for seedlings, $300 for site preparation and $300 for fertilizer. Additionally, finding that the provisions of La. R.S. 3:4278.1 applied to the facts of this case, the trial court imposed a separate $300 treble damage penalty.[2] The court's reasoning was as follows:
The evidence clearly shows that Edward Roberts went upon the disputed tract in February, 2003; that he did so when the resident forester was not in the area, that he did bush hog some pine seedlings, and did commence to erect a fence. He obviously was trying to take back what he considered to be his property by building a new boundary fence. He knew at the time that he and his family had not possessed the disputed tract. He and his family had paid taxes *406 as they held record title, but a survey told him that the line was not where he thought it was. He secured a quit-claim deed and decided to take action to claim what he thought was his. He certainly had the right to take action, but it should have been through a lawsuit, rather than a trespass. Mr. Roberts did go upon the property, he did so willfully and intentionally, he did cause damage, and he did so without the consent of the owner.
Accordingly, Edwards Roberts must respond in damages for his actions in February, 2003, by going upon the land and cutting the trees, and commencing to erect the fence. Even if this Court were to determine the defendant's actions were in good faith, he must still respond in damages as requested by Plaintiff, because he certainly should have been aware that his actions were without the consent of Loutre, and he has certainly failed to make payment after notification and legal demands were made. This Court finds that Roberts will be held liable for the civil damages and reasonable attorney fees as provided for in LSA-R.S. 3:4278.1.
In denying Loutre an award of survey costs and expert witness fees, which is now contested by Loutre, the court reasoned as follows in its written reasons for judgment:
The end result of this case is that Loutre received more land than it paid for, and that Roberts and his family received less land than they paid for. Robert's actions were more out of frustration than an attempt to cause deliberate harm. This Court does not deem it fair to assess these costs to the Defendant. Both parties incurred costs in the presentation of their cases, and it is equitable to allow both parties to pay their respective costs. Therefore the request that the cost of the survey and the fees of the expert witness will be denied.
Roberts appealed the judgment arguing that the trial court erred in awarding treble damages and attorney fees under La. R.S. 3:4278.1 because the evidence showed his belief that he was the owner of the tract and was acting in good faith with no intent to destroy Loutre's trees. Alternatively, Roberts argued that the $700 restoration award and the $15,000 attorney fees award are excessive.
Loutre answered the appeal urging that the attorney fee award was insufficient in light of the extensive work and preparation required for preparation and litigation of the case. Loutre also contends that the trial court erred in awarding insufficient damages for reforestation and in denying an award of survey costs and expert witness fees.

Discussion

I.
The trial court applied the treble damage piracy statute La. R.S. 3:4278.1 ("the Statute") to only the $100 cost of the 65 pine seedlings recently planted by Loutre in the months before Roberts's actions. The Statute's measure of damage is "three times the fair market value of the trees." Therefore, the court correctly did not triple the other elements of the damage which it assessed to Roberts, and Loutre makes no argument for a penalty greater than $300. Therefore, this case presents the question of whether the $100 loss of pine seedlings, which were bush hogged by Roberts in his construction of a disputed boundary fence, falls under the timber piracy Statute entitling Loutre to $15,000 in attorney fees.
The so-called "timber trespass" or "timber piracy" Statute provides, in pertinent part, as follows:
A. It shall be unlawful for any person to cut, fell, destroy, remove, or to divert *407 for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney's fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees.
D. If a good faith violator of Subsection A fails to make payment under the requirements of this Section within thirty days after notification and demand by the owner or legal possessor, the violator shall also be responsible for the reasonable attorney fees of the owner or legal possessor.
La. R.S. 3:4278.1.
With only 65 pine seedlings damaged in this boundary dispute and no marketable timber removed from the property, an issue of statutory interpretation for the application of the Statute is obvious.[3] The Civil Code provisions for the interpretation of laws provide as follows:
La. C.C. art. 9. Clear and unambiguous law
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
La. C.C. art. 10. Language susceptible of different meanings
When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.
La. C.C. art. 12. Ambiguous words
When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
Additionally, the timber piracy Statute being punitive; it must be strictly construed. Alexander v. Dunn, 44,272 (La.App.2d Cir.6/3/09), 15 So.3d 302, writ denied, 09-1487 (La.10/2/09), 18 So.3d 122.
In its recent ruling in Sullivan v. Wallace, 10-0388 (La.11/30/10), 51 So.3d 702, our Supreme Court held that the timber trespass Statute does not apply to disputes between co-owners over the harvesting of *408 timberland. In making its statutory interpretation, the court made the following general observation about the Statute:
Section 4278.1 is entitled "Trees, cutting without consent; penalty." Given this context, the legislative purpose behind La.Rev.Stat. 3:4278.1 is to protect those with interests in trees from loggers who enter their property without permission to harvest timber illegally.
Id. at 709. Since no merchantable timber was harvested, removed and sold by Roberts, the damages to pine seedlings resulting from his actions on Loutre's property appear to fall outside this statutory purpose.
From the language of the Statute, a trespasser shall not "cut, fell, destroy, remove, or ... divert for sale or use ... trees" of the land or timber owner. The "fair market value" of those "trees" serves as the Statute's measure of loss for the assessment of treble damages. Clearly, pine seedlings may not be cut, felled, removed and diverted for sale. The seedlings were however "destroyed." Nevertheless, those destroyed seedlings would not have a fair market value in the same sense that mature timber or pulpwood can be sold on the market. Also, seedling destruction, in contrast to the destruction of "trees," can be immediately and simply remedied by the cost of replanting. Trees are managed by the landowner for years and their lost value when destroyed by the trespasser may not be optimal due to market conditions and the age of the trees when destroyed. "Because the statute is penal and strictly construed, the fair market value of trees referenced in the statute is limited to the fair market value of trees as timber." Hornsby v. Bayou Jack Logging, note 2, supra at 371, Weimer, J., concurring. Here, the trial court's award of the expense of seedlings ($100) and the expense of replanting or restoration ($600) was not a "fair market value" determination of the destroyed seedlings which had no value for a market sale.
Thus, even with the Statute's language regarding "destroyed" "trees," the other language of the Statute regarding the "sale and use" of those trees as harvested timber and pulpwood which have a merchantable "fair market value" creates the susceptibility for different meanings. La. C.C. art. 10. This requires an interpretation that conforms to the purpose of the law. Moreover, a trespasser's stepping on or driving over a few seedlings is greatly different from the statutory purpose expressed in Sullivan. Thus, the Statute's application would arguably represent an absurd result in this instance. Therefore, in accordance with the Supreme Court's expression of the statutory purpose of the law, we find that the destruction of pine seedlings in this case does not warrant the imposition of treble damages.[4]
Moreover, Roberts's actions as reviewed by the trial court in its ruling were not those of a mere trespasser. Roberts acted on the strength of the recorded titles to the fifteen acres of his family and predecessors-in-title and his family's payment of taxes on that fifteen acres. Loutre Land and Timber Co. v. Roberts, supra. He also had obtained a quitclaim deed from the Succession of Morgan in an effort to end the claim caused by Morgan's lengthy adverse possession of the disputed land. Thus, even assuming that the Statute *409 does apply, the more limited treble damage provision (without attorney fees) of Section C of the Statute would govern. Acting under color of title, Roberts was a "good faith violator" who "should have been aware that his actions were without the consent" of Loutre which had acquired a competing claim to the property from the Succession of Morgan. While the treble damage penalty of the Statute would be applicable, the further provision for attorney fees under Section D would not. Neither Loutre's petition nor its evidence at trial revealed that a 30-day demand for the payment of the $100 cost for seedlings was ever made by Loutre prior to the institution of suit, affording Roberts the choice of paying such minor amount and avoiding the harsh penalty, with reservation of his rights for his claim to the land.[5] Therefore, the large award of $15,000 in attorney fees for the collection of $100 is excluded by the operation of Section D.[6]
From the above statutory interpretation of the Statute, the trial court's judgment is amended to exclude the penalty and award for attorney fees.

II.
In answer to the appeal, Loutre argues that the trial court's award of $700 for the replanting of seedlings was insufficient. The court found that Loutre could have replanted seedlings in 2003 immediately north of the line for the fence which Roberts had begun to establish. Three years later at the time of the trial, Loutre asserted that the rapid growth of the planted pine thicket necessitated the planting of much larger pine trees to compete with the surrounding young, but much taller, pine trees along the disputed line. The planting of 65 larger trees in 2006 would cost $3,500-$4,000, and Loutre now seeks on appeal that larger amount for its damages.
"In assessing damage to property, generally, courts have considered the costs of restoration as the proper measure of damage where the thing damaged can be adequately repaired.... No mechanical rule can be applied with exactitude in the assessment of property damage under La. Civ.Code art. 2315. Each case must rest on its own facts and circumstances as supported by the proof in the record." Coleman v. Victor, 326 So.2d 344, 346-347 (La. 1976).
With this trespass damage recoverable in tort, the trial court was correct in measuring the physical damage to the property as of the time of the loss and in requiring that Loutre mitigate its loss. When property is damaged through the legal fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the damage. Hornsby v. Bayou Jack Logging, supra, citing Coleman v. Victor, supra. An injured plaintiff has a duty to take reasonable steps to mitigate damages. Aisole v. Dean, 574 So.2d 1248 (La.1991); Pisciotta v. Allstate Ins. Co., 385 So.2d 1176 (La.1979).
The very narrow bush hogged strip in question would have grown in new trees *410 with the surrounding pine seedlings had Loutre immediately replanted the line in 2003. The photos taken in 2003 reveal that the field grass growing beyond the bush hogged strip was taller than the surrounding seedlings recently planted. The trial court was not manifestly in error in concluding that a replanting on the line in the fall of 2003 would have insured a uniform growth of the planted pine forest. This assignment of error has no merit. Likewise, we find no merit in the necessity of the various experts Loutre employed to establish the process for planting the larger trees. The cost of those experts could therefore be rejected by the trial court. La. R.S. 13:3666.
Finally, we find merit in Loutre's claim for the award for its surveying costs. Under La. C.C.P. art. 3693 for a boundary dispute, "[a]fter considering the evidence, including the testimony and exhibits of a surveyor or other expert appointed by the court or by a party, the court shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties." Likewise, all final judgments which affect title to immovable property shall describe the immovable property with particularity. La. C.C.P. art. 1919.
Evidence regarding the survey costs included that of Harry Edward Perry, a Loutre forester. Perry testified that because of the lawsuit, Loutre obtained a survey of the property which was introduced into evidence. The invoice of Messinger & Associates showed that Loutre was charged $3,025 for the survey.
The final judgment, which should have incorporated the eleven course and distance calls of the Messinger survey for the line of the meandering old fence across the Northeast Quarter of the Northeast Quarter of Section 10, recognized the old fence line as the boundary between the parties' contiguous tracts.[7] The location of that fence was essential for Loutre's claim to the disputed fifteen acres since that line demarcating the parties' ownership does not appear in any recorded instrument in the competing title chains of the parties.
Accordingly, the trial court's failure to award Loutre the survey costs for this boundary dispute was error, and the judgment will be amended.

Conclusion
From the above interpretation of the Statute, we reverse the trial court's award for treble damages and attorney fees. We further reverse the trial court's ruling denying the cost of Loutre's survey of $3,025 and that amount is hereby granted. In all other respects, the trial court's judgment pertaining to the damages and costs of litigation is affirmed. Costs of appeal are assessed to Roberts.
REVERSED IN PART; AFFIRMED IN PART.
MOORE, J., concurs in part, dissents in part and assigns reasons.
*411 MOORE, J., concurs in part and dissents in part.
I respectfully concur with the court's opinion insofar as it awards Loutre Land the cost of the survey, and finds that the district court did not abuse its discretion in rejecting the expert witness fees of Carr and Weems or in fixing the damages for reforestation.
I dissent, however, from the portion of the opinion that reverses the treble damages and attorney fees, ostensibly under a reading of La. R.S. 3:4278.1. The majority cites Sullivan v. Wallace, 2010-0388 (La.11/30/10), 51 So.3d 702, for a rule that the penal provision cannot apply unless the defendant "harvested" trees illegally; Roberts destroyed trees that were mere seedlings, too young to be "harvested" for sale, ergo no penalty applies. However, Sullivan addressed the liability of co-owners of timberland; I do not read it as holding that trespassers may destroy seedlings with impunity. Moreover, I strongly disagree with the majority's statements that Roberts acted "on the strength of recorded titles" and, critically, on a quitclaim deed obtained in an effort to "end the claim." In reversing this court, the supreme court held that Loutre Land acquired title by a full warranty deed, including all rights of prescription, and that Roberts obtained a quitclaim deed only because the succession's attorney told him that the succession had already sold the disputed tract. These facts completely negate any claim of good faith on Roberts's part. The district court was not plainly wrong to find that Roberts willfully and intentionally violated the statute.
I would therefore affirm the award of treble damages and attorney fees.
NOTES
[1] The actual trial and ruling on the damages occurred in 2006 before the Honorable Glynn D. Roberts. After our reversal of the related summary judgment regarding ownership of the land in Loutre Land and Timber Co. v. Roberts, 42,918 (La.App.2d Cir.4/16/08), 981 So.2d 775, and remand, the evidence and ruling on damages became part of the ultimate judgment by the Honorable James M. Stephens rendered in 2009.
[2] The trial court's award of $100 for actual seedling cost and the separate $300 penalty as treble damages for that cost was a calculation error as the penalty should have been only $200. Under the treble damage statute, the court shall "determine the fair market value ("FMV") of the trees and multiply the FMV by three to arrive at the damage award." Hornsby v. Bayou Jack Logging, 04-1297 (La.5/6/05), 902 So.2d 361, 365.
[3] While Roberts's assignment of error challenges the award of attorney fees claiming that his actions along the disputed boundary were in good faith (see Sections C and D of the Statute), the appellate court may first question whether a cause of action exists under the Statute. La. C.C.P. art. 927(B). See also, La. C.C.P. arts. 2129 and 2164. As the Supreme Court has recently expressed, "the absence of an assignment of error or lack of objection to the district court's choice of law ruling by a litigant would not prevent the court of appeal from raising this issue. Without doubt, an appellate court has the authority to raise an issue sua sponte on appeal." Wooley v. Lucksinger, 09-0571 (La.4/1/11), 61 So.3d 507, 562.
[4] The destruction of smaller trees in a case where merchantable timber is removed from the land in violation of the Statute may result in a measure of loss subject to treble damages. The Statute's use of the term "destroyed" may have application for such incidental damage to smaller trees with some merchantable value destroyed by the overall piracy of the timber from a tract.
[5] The trial court's quoted ruling indicating that a "notification" for payment was given to Roberts by Loutre is not supported by the record. While Roberts was notified of Loutre's title claim and ceased construction of the fence, there was no testimony that any demand for payment of $100 in seedling costs was made.
[6] We further note that under the recent ruling in Arceneaux v. Amstar, 10-2329 (La.7/1/11), 66 So.3d 438, the total amount of attorney fees expended in complex litigation may not always be awarded in their entirety if the statutory claim imposing an attorney fee award applies only to a small portion of the litigation.
[7] The trial court's judgment simply recognizes Loutre's ownership to "that part of the Northeast Quarter, Section 10, Township 16 North, Range 8 East, lying north of the boundary fence, which fence separates the property owned by Edward Roberts (previously property of Wilton A. Roberts, et al) from the `Morgan Place' now owned by Loutre Land and Timber Company." The Messinger survey actually located the fence line as beginning at a point 316.84 feet south of the Northeast corner of Section 10 and ending at a point 412.58 feet south of the Northwest corner of the Northeast Quarter of the Northeast Quarter of Section 10. Although the Messinger metes and bounds calls for the fence line across the quarter/quarter section were necessary to meet the particularity requirement of La. C.C.P. art. 1919, the trial court's judgment declaring Loutre's ownership is now final.